# SCOTTISH UNION & NATIONAL INS. CO. v. CORNETT BROS.

No. 3228.    Opinion Filed May 12, 1914.

Rehearing Denied August 11, 1914.

(142 Pac. 315.)

1.    **INSURANCE—Nonwaiver Agreement—Validity and Effect.** Upon learning that the insured had violated the ''books and inventory'' clause of the policy, and that the books, accounts, and inventories had been destroyed by fire, the company, through its adjuster, and the insured entered into the following agreement: ''Nonwaiver Agreement.—It is hereby mutually understood and agreed by and between Cornett Bros. of Verden, Oklahoma, of the first part, and the Scottish Union & National Insurance Company and other companies signing this agreement, parties of the second part, that any action taken by such parties of the second part in investigating the cause of fire or in investigating and ascertaining the amount of loss and damage to the property of the parties of the first part caused by fire alleged to have occurred on September 8th, 1909, shall not waive or invalidate any of the conditions of the policy of the parties of the second part, held by the parties of the first part, and shall not waive or invalidate any rights whatever of either of the parties to this agreement. The intention of this agreement is to preserve the rights of all parties

hereto and provide for investigation of the fire and the determination of the amount of the loss or damage without regard to the liability of the parties of the second part." **Held**, this agreement is valid and binding upon the parties thereto and reserves to the company every right under the provisions of the policy which had not been previously waived, and to the insured every right which had not been forfeited.

2. **SAME—Iron-Safe Clause—Violation—Forfeiture.** The provision of an insurance policy requiring that the insured keep his books and inventories in a fireproof safe at night is a promissory warranty on the part of the insured that he would do so. And such provision is valid and beneficial alike to the insured and to the insurer, in that it affords both parties an accurate means of ascertaining the loss sustained, and thereby obviates disputes and opportunities for fraud and avoids litigation; and a failure to substantially comply with such provision on the part of the insured will forfeit his right to recover on the policy.

(Syllabus by Harrison, C.)

*Error from District Court, Grady County;*
*Frank M. Bailey, Judge.*

Action by Cornett Bros., a partnership, composed of E. G. and J. H. Cornett, against the Scottish Union & National Insurance Company, on a policy. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

*Scothorn, Caldwell & McRill,* for plaintiff in error.

*Bond & Melton,* for defendants in error.

Opinion by HARRISON, C. This was an action upon an insurance policy for $1,000, issued to Hennesy & Cornett Bros., a partnership, by the Scottish Union & National Insurance Company, through its agents, Hostick & Phillips. After the issuance of the policy, and before the fire in which the property insured was lost, Hennesy withdraw from the firm, and the business was continued under the firm name of Cornett Bros., composed of E. G. and J. H. Cornett. After the withdrawal of Hennesy from the original firm, Cornett Bros. took out an additional policy of $1,000 in the Fire Association of Philadelphia, through the same agents, Hostick & Phillips, who represented both companies. Some months subsequent to the issuance of the second policy, the fire occurred in which the stock of goods insured was lost. Both companies denied liability on the

ground that the insured had violated the provisions of the policies in failing to observe the "iron-safe" and "inventory" clauses. After the fire, and notice to the company of same, Stanley R. Bruce, the authorized adjuster for both companies, visited the insured for the purpose, if it could be done, of adjusting the loss and paying the policies. However, upon learning that the books and accounts of the partnership, together with all the inventories, etc., had been destroyed in the fire, the agent of the companies denied any liability on the part of either of them, on the grounds that the books and inventories had been destroyed in the fire, and that plaintiffs had violated the provisions of the policy in failing to observe and comply with the "iron-safe" and "inventory" clauses of the policy. Whereupon he entered into the following written agreement with the insured, to wit:

"Nonwaiver Agreement.—It is hereby mutually understood and agreed by and between Cornett Bros. of Verden, Oklahoma, of the first part, and the Scottish Union & National Insurance Company and other companies signing this agreement, parties of the second part, that any action taken by such parties of the second part in investigating the cause of fire or in investigating and ascertaining the amount of loss and damage to the property of the parties of the first part caused by fire alleged to have occurred on September 8th, 1909, shall not waive or invalidate any of the conditions of the policy of the parties of the second part, held by the parties of the first part, and shall not waive or invalidate any rights whatever of either of the parties to this agreement. The intention of this agreement is to preserve the rights of all parties hereto and provide for investigation of the fire and the determination of the amount of the loss or damage without regard to the liability of the parties of the second part."

This agreement was signed by Cordell Bros. and by each of the insurance companies, by Stanley R. Bruce, agent of both companies.

After the execution of the foregoing agreement, the insured proceeded to collect what data he could in proof of his loss and demanded payment of the policies, and, upon refusal of both companies to pay same, brought a separate action against

each company upon the policy. Judgment was rendered in each case in favor of the insured for the amount of the policies, and each company appeals to this court for review, the two causes being No. 3228 and No. 3229 in this court, and because the same questions of law and fact are involved in both cases, they are consolidated and briefed together.

The one material and decisive proposition involved is whether, under the foregoing agreement, the insurance company should be held to have waived the violation of the "books and inventory" clause in the policy. Other questions are presented and argued in the briefs of counsel, but, as we view the case under the circumstances presented by the record, we think this question is decisive of the case. The validity of the non-waiver agreement is not seriously questioned, and, we might say, could not successfully be questioned. The propositions involved are: What rights of the company were waived, and what rights were reserved under such agreement? It is contended by the insurance company that the failure to keep books and inventories was not waived, and by the insured that, inasmuch as the adjuster, after the execution of the instrument, induced him to proceed with collecting what data in the way of inventories that he could collect from wholesale houses and from other sources in order to make proof of the loss sustained, the company thereby waived the "books and inventory" clause by reason of such inducement. This contention cannot be sustained. The nonwaiver agreement is, to our minds, a plain, unambiguous written instrument and plainly speaks for itself as to the intention of the parties. It plainly reserves to the company every right which had not been previously abandoned by the company through the acts of its agent. There is nothing in the record to show that the company had previously waived or abandoned its rights under the provisions of the "books and inventory" clause. It is true, under the record, that the company should be held to have waived the "iron-safe" clause, for the reason that the agents who issued the policy had knowledge that the insured had no iron safe, and for that

reason kept the policy in their own safe for safe-keeping for the insured. But this by no means constitutes a waiver of the provisions for keeping the books and inventories safe from fire or loss of any kind. The insured could have carried them home or anywhere, provided they kept them safe and secure from loss by fire or otherwise, and still have been within a substantial compliance of the terms of the policy. But, instead of that, they carelessly and negligently left them in the store, where they were all destroyed in the fire 'which destroyed the stock of goods. There is no excuse for such action on the part of the insured. This, to our minds, is one of the most beneficial and material provisions in the policy, aside from the primary provision acknowledging liability on the part of the company in case of a loss.

In *Springfield Fire & Marine Ins. Co. v. Halsey,* 34 Okla. 383. 126 Pac. 237, it was said:

"The manifest purpose of such provisions is to afford an accurate means of determining the actual loss sustained. They are beneficial alike to the insured and to the insurer. They impose no unreasonable burden upon the insured. Common business policies imposed the same obligation in order that he may at all times know the condition of his business. He is as much benefited by such provision and by a compliance therewith as is the insurer, and in most cases more so, for it affords him an accurate means of ascertaining his loss, and thereby obviating disputes and avoiding litigation."

In *Shawnee Fire Ins. Co. v. Thompson & Rowell,* 30 Okla. 466, 119 Pac. 985, it was held:

"The provision of a fire insurance contract which requires that the insured keep such books and inventory securely locked in a fire-proof safe at night, etc., is a promissory warranty. *** "

See, also, *Merchants' & Planters' Ins. Co. v. Marsh,* 34 Okla. 453, 125 Pac. 1100, 42 L. R. A. (N. S.) 996; *German-Am. Ins. Co. v. Fuller,* 26 Okla. 722, 110 Pac. 763.

As stated above, a provision in a policy requiring the keeping of books and inventories is essentially a greater benefit to the insured than to the insurer. Should he comply with such provisions and keep his accounts and books and inventories

straight and correct, so as to be able at any time after sustaining a loss by fire to show exactly what his loss consisted of, there would be no excuse for insurance companies denying liability, and we believe in such cases none would be offered. To sustain or uphold such flagrant disregard of the material provisions of an insurance policy, and after such disregard allow the insured to come into court and recover upon proof of loss made from scraps of memory and memoranda, and inventories picked up hither and thither, would be to impose an unjust burden upon those who insure in good faith and faithfully endeavor to comply with the provisions of their policies. The nonwaiver agreement above clearly reserves to the company every right, under the provisions of the policy, which had not been previously waived, and to the insured every right which had not been forfeited, and the record fails to disclose any acts upon the part of the adjuster sufficient to constitute a waiver of the books and inventory provisions of the policy.

The argument that the insured was induced to go to additional expense and time in procuring the necessary data to prove his loss on the theory that the company had waived his failure to keep the books and inventories does not strike us with any convincing force. The insured knew that he had violated the provisions of the policy in his failure to keep the books and inventories as required. He also knew whether he had willfully or negligently failed to do so, and in either event, he being the one who had breached the provisions of the contract, it was to his advantage to get up whatever data he could in order to prove his loss.

We believe the judgment should be reversed, and the cause remanded to the court below for judgment in harmony with these conclusions.

By the Court: It is so ordered.