## AMERICAN CENT. INS. CO. OF ST. LOUIS, MO., v. SINCLAIR.

No. 6744—Opinion Filed Sept. 26, 1916

(160 Pac. 60.)

**1. Estoppel—"Waiver"—Nature.**

A waiver is the voluntary or intentional relinquishment of a known right, or such conduct of a party, or his authorized agent, as warrants an inference of such intent. It is essentially a matter of intention and may arise out of the acts done by a party, or his authorized agent, who has full knowledge of all the material facts out of which the right springs.

**2. Same—Question for Jury.**

"A waiver involves the notion of an intention, entertained by the holder of some right, to abandon or relinquish instead of insisting on the right." It is a question of fact to be determined by the jury.

**3. Insurance — Actions on Policies — Evidence—Sufficiency.**

The record in this case examined, and held, there was sufficient evidence, if true, to warrant an inference that there had been a waiver of the iron-safe, books, and inventory clause in a fire insurance policy, and that the cause was properly submitted to the jury for their determination.

(Syllabus by Hayson, C.)

Error from District Court, McCurtain County; Summers Hardy, Judge.

Action by W. C. Sinclair against the American Central Insurance Company of St. Louis, Mo. Judgment for plaintiff, and defendant brings error. Affirmed.

Scothorn, Caldwell & McRill, for plaintiff in error.

Steel, Lake & Head and Ames, Chambers, Lowe & Richardson, for defendant in error.

Opinion by HAYSON, C. The defendant in error, W. C. Sinclair, filed two separate actions against the plaintiff in error, in the district court of McCurtain county, seeking to recover on two insurance policies for loss by fire sustained to property covered by said insurance policies. The plaintiff in error, defendant in the district court, filed its answer denying that the plaintiff in the case complied with the terms of the policies and alleging that he violated what is known as the iron-safe, books, and inventory clauses and by reason thereof the policies were forfeited. The defendant in error, plaintiff in the district court, filed his reply and denied specifically each of the allegations of the answer, and alleged that the plaintiff in error, defendant in the district court, had by certain acts and conduct waived the right to forfeit the policies on account of any violation of any of those provisions in the policy. The causes were consolidated and tried to a jury. Verdicts were rendered in favor of Sinclair, defendant in error, and judgment rendered thereon. From this judgment the plaintiff in error American Central Insurance company, brings error.

The record discloses the facts to be as follows: On June 24, 1912, the plaintiff in error executed a certain insurance policy, by the terms of which it insured the defendant in error against loss or damage by fire on the stock of merchandise owned by defendant in error, located in his store at Millerton, Okla., in the sum of $2,500 for one year. And that on October 16, 1912, the plaintiff in error executed a certain insurance policy in a like amount and covering the same property for one year The policies contained certain covenants and warranties commonly known as the "iron-safe, inventory, and book warranty" clauses. On January 6, 1913, the defendant in error sustained a total loss by fire to his merchan-

dise. Upon receipt of notice of the loss the plaintiff in error referred the matter to the Bates Adjustment Company of Oklahoma City, for adjustment, and that one E. C. Cooper of that firm handled the matter as adjuster for the company. Upon arriving at Millerton where the loss occurred and after meeting Sinclair, the adjuster learned that the assured had failed to comply with certain provisions of the policies with reference to taking inventories and keeping his books in a safe place, and that some of the books were lost in the fire, etc. The adjuster thereupon refused to proceed further until, what is known as, a nonwaiver agreement was executed by the defendant in error Sinclair. After some discussion the nonwaiver agreement was executed and signed by Sinclair for himself, and for the insurance companies by Cooper, the nonwaiver agreement being as follows:

### "Nonwaiver Agreement.

"It is hereby mutually understood and agreed by and between W. C. Sinclair, of the first part, and the American Central Insurance Company of St. Louis, Mo., and other companies signing this agreement, parties of the second part, that any action taken by any adjuster or representative of the said parties of the second part in investigating the cause of fire or investigating and ascertaining the amount of loss and damage to property of the party of the first part caused by fire alleged to have occurred on January 6, 1913, shall not waive or invalidate any of the conditions of the policies of the parties of the second part held by the party of the first part, and shall not waive or invalidate any rights whatever of either of the parties to this agreement, unless such waiver be in writing and signed by each of the parties to this agreement.

"The intent of this agreement is to preserve the rights of all parties hereto and provide for an investigation of the fire and the determination of the amount of the loss or damage only for the interest of 'whom it may concern,' without regard to liability of parties of the second part.

"Signed in duplicate this 30th day of January, 1913. W. C. Sinclair. American Central Insurance Company of St. Louis, Mo., E. C. Cooper, Adjuster. American Insurance Company of Newark, N. J., by E. C. Cooper, Adjuster."

After the execution of this agreement. Cooper as adjuster for the insurance company, and Sinclair, the insured, worked together upon books and data produced by the assured; they worked all of that day and a part of the next day. The insured, Sinclair, at the request of Cooper, the adjuster, submitted to an examination under oath which was transcribed and signed by Sinclair. Up to this point the witnesses agree as to what was said and done. But from this point on there is a direct conflict in the testimony. Sinclair testifies in substance that at the conclusion of the investigation by the adjuster Cooper, the adjuster arrived at and stated in definite figures the total amount of the loss; that the adjuster then and there stated that all of the provisions of the policies had been complied with, except one, and that one was the sending in the proofs of loss by the insured; that everything was all right; that he (Cooper) was going back to Oklahoma City in the course of a day or so, and upon his arrival there he would turn the matter in, if it was not all right he would phone Sinclair, but if it was all right Sinclair would get his money in eight or ten days; that he told Sinclair to send in his proofs of loss and get up certain duplicate invoices from wholesale houses and send them in. Cooper in his testimony denies all these statements, but states that he did not arrive at the amount of the loss, did not direct or request Sinclair to send in his proofs of loss and never in any manner promised to pay the loss. Sinclair further testifies that Cooper upon his arrival at Oklahoma City did not phone him, and Sinclair then sent in the proofs of loss and duplicate invoices, and was at some little expense and trouble in so doing. After the evidence was all in the court instructed the jury as follows:

"It is shown by the testimony that after said loss the defendant companies asserted their right to claim a forfeiture of said policies, and that thereupon the parties executed what is known as a nonwaiver agreement, by the terms of which it was agreed that the adjuster for the defendant companies might continue his investigations of said losses without waiving the right of the defendant companies to claim a forfeiture of said policies; and you are instructed that this agreement is valid and binding and that plaintiff is not entitled to recover unless there was in fact an actual adjustment of the losses sustained by plaintiff under the several policies.

"You are instructed that if you believe from the evidence by a fair preponderance thereof that after the execution of said nonwaiver agreement, the plaintiff and the adjuster for said defendant companies ascertained the amount of the loss suffered by plaintiff, and the amount due thereon, and agreed that the defendant companies would pay the same, then you should find for the plaintiff on each several policies against the defendant company writing the same for the amount of loss, which you may find him to have suffered thereunder, not to exceed the amount of said policies, and if you fail to so find, you should return a verdict for the defendant."

Plaintiff in error claims that there was

no evidence introduced at the trial which would justify the court in giving these instructions, and that the giving of these instructions was error. This is the only proposition briefed by plaintiff in error. Consequently there is but one question to be determined here: Were the acts of the adjuster, after the execution of the nonwaiver agreement, under the record in this case, as testified to by Sinclair, if true, sufficient to constitute a waiver of the books, inventory and iron-safe clauses in the policies. If so, the instructions are correct, and the jury having passed upon the facts, the judgment must be affirmed; if not, then the judgment must be reversed.

"A waiver is (the voluntary or) intentional relinquishment of a known right, or such conduct as warrants an inference of such intent." Findeisen v. Insurance Co., 57 Vt. 520; Dale v. Insurance Co., 95 Tenn. 38, 31 S. W. 266.

It is essentially a matter of intention and may arise out of acts done by one who has full knowledge of all the material facts of the transaction. In Northwestern National Life Insurance Co. v. Ward, 56 Okla. 188, 155 Pac. 524, our court says:

"Waiver involves the notion of an intention entertained by the holder of some right to abandon or relinquish, instead of insisting on, the right."

The court in its opinion quoted from Libby v. Haley, 91 Me. 331, 39 Atl. 1004, as follows:

"Sometimes the conduct of a party may show that he not only intended to and did waive his rights, but that the adverse party had been misled thereby, when the law raises an absolute bar to the repudiation of conduct that caused the mischief."

What is known as the "nonwaiver" agreement and its effect has been settled, and we believe correctly by this court in Scottish Union & National Insurance Co. v. Cornett Bros., 42 Okla. 645, 142 Pac. 315. A similar question to the one that arises here was before the court in that case. The court there said:

"The nonwaiver agreement above clearly reserves to the company every right, under the provisions of the policy, which had not been previously waived, and to the insured every right which had not been forfeited."

The court then recognizes the rule that the acts of the adjuster might constitute a waiver of the provisions of the policy by adding:

"And the record fails to disclose any acts * * * of the adjuster sufficient to constitute a waiver of books and inventory provisions of the policy."

The nonwaiver agreement here provides:

"That any action taken by any adjuster or representative * * * in investigating the cause of fire, or investigating and ascertaining the amount of loss and damage to property * * * caused by fire alleged to have occurred January 6, 1913, shall not waive or invalidate any of the conditions of the policies * * * and shall not waive or invalidate any of the rights whatever of either of the parties to this agreement, unless such waiver be in writing signed by each of the parties to this agreement. The intent of this agreement is to preserve the rights of all parties hereto and provide for investigation of the fire and the determination of the amount of the loss or damage only for the interest of 'whom it may concern' without regard to liability of parties of the second part" (the insurance companies).

The nonwaiver agreement provides that the acts of the adjuster while engaged in just two things shall not waive or invalidate the conditions of the policies. Those two things are the investigation of the cause of the fire and the investigation and determination of the amount of loss. There is no contention here that the loss was not an honest loss, but the plaintiff in error defends upon the ground that the provisions in the policies known as the iron-safe, book, and inventory clauses had been violated, and by reason thereof the policies had been forfeited. Forfeitures are not favored by the law, and one who seeks to protect himself by an agreement that his acts shall not be taken or construed as a waiver of a forfeiture which he is entitled to exercise must see to it that when he acts or makes statements he is engaged strictly in pursuit of those things provided for in the agreement, which under this agreement was the investigation of the cause of the fire or the investigation and ascertainment of the amount of loss. The contract being solely for the benefit of the insurer will be strictly construed against the insurer.

In Hollis v. State Insurance Co., 65 Iowa, 454, 21 N. W. 774, the court say:

"But we think it is not true that such waiver can be created only by such acts or conduct as would create a technical estoppel. Neither forfeitures nor estoppels are favored by the law, and it follows necessarily from this consideration that the waiver of a forfeiture may be sustained by circumstances which do not present the strong equities which would be required to create an estoppel. When plaintiff asserted a claim under the policy for the loss, and defendant was informed of the facts out of which the forfeiture grew, it had the right at once to treat the contract as at an end. If it had elected * * * to remain silent, perhaps a waiver could not have been inferred from its silence. But if, with knowledge of the circumstances, it continued to treat the contract as of binding force, and induced plain-

tiff to act in that belief, the rule holding that it thereby waived the forfeiture is a very just one."

In Roberts, Willis & Taylor Co. et al. v. Sun Mut. Insurance Co., 13 Tex. Civ. App. 64, 35 S. W. 955, the court says:

"Where an adjuster, after learning of the destruction of the insured's itemized inventory, ledger, and scratch book, refused to proceed with the investigation of the loss until the insured agreed that further examination into the loss should 'not be taken as any waiver of any defense the companies may have by reason of the breach of warranty as contained in the iron-safe clause, we having lost our detailed inventory,' there was evidence from which the jury might infer a waiver of the requirement to produce the books other than the detailed inventory, particularly as the adjuster, after making an estimate of the loss, pursuant to said agreement, applied to plaintiffs, to whom the policies had been assigned, for duplicate invoices of purchases of goods."

To the same effect are the following cases: Titus v. Insurance Co., 81 N. Y. 410 (Court of Appeals) ; Oshkosh Gaslight Co. v. Germania Fire Insurance Co., Wis. 454, 37 N. W. 819, 5 Am. St. Rep. 233 ; Dick et al. v. Equitable Fire & Marine Insurance Co., 92 Wis. 46, 65 N. W. 742 ; Brown v. State Insurance Co., 74 Iowa, 428, 38 N. W. 135, 7 Am. St. Rep. 495 ; Corson v. Anchor Mutual Insurance Co., 113 Iowa, 641, 85 N. W. 806 ; German Insurance Co. of Freeport, Ill., v. Allen, 69 Kan. 729, 77 Pac. 529 ; Insurance Co. v. Eggleston, 96 U. S. 572, 24 L. Ed. 841 ; Liverpool & London & Globe Insurance Co. v. Cargill, 44 Okla. 735, 145 Pac. 1134.

In Western Reciprocal Underwriters' Exchange v. Coon, 38 Okla. 453, 134 Pac. 22, this court in the fourth paragraph of the syllabus says:

"An adjuster for an insurance company is authorized to waive forfeiture in an insurance policy.

"(a) The same rule applies to an assistant adjuster unless his authority is limited, to the knowledge of the assured."

Measured by this rule Cooper had the authority as an adjuster to waive any of the rights of forfeiture in the policy. He acknowledged this right when he refused to proceed until a nonwaiver agreement had been executed after having ascertained that a right of forfeiture existed. If he had authority to enter into this contract for the companies, he also had the authority to waive it and to waive the provisions of the policy under which a forfeiture could be claimed. And this he could do just as effectually verbally as in writing. Western National Insurance Co. v. Marsh, 34 Okla.

414, 125 Pac. 1094, 42 L. R. A. (N.S.) 991 ; Young v. Hartford Fire Ins. Co., 45 Iowa, 377, 24 Am. Rep. 784 ; United States Life Ins. Co. v. Lesser, 126 Ala. 568, 28 South, 646 ; Reaper City Ins. Co. v. Jones, 62 Ill. 458 ; King v. Council Bluffs Ins. Co., 72 Iowa, 310, 33 N. W. 690 ; German Ins. Co. v. Gray, 43 Kan. 497, 23 Pac. 637, 8 L. R. A. 70, 19 Am. St. Rep. 150 ; Barnard v. National Fire Ins. Co., 38 Mo. App. 106 ; Wilson v. Commercial Union Assurance Co., 51 S. C. 540, 29 S. E. 245, 64 Am. St. Rep. 700 ; Murphy v. Royal Ins. Co., 52 La. Ann. 775, 27 South, 143 ; Berry v. American Central Ins. Co., 132 N. Y. 49, 30 N. E. 254, 28 Am. St. Rep. 548 ; Northwestern Nat. Life Ins. Co. v. Ward, 56 Okla. 188, 155 Pac. 524.

The iron-safe, book, and inventory clauses in the policies were primarily for the purpose of ascertaining the amount of the loss should one occur, and to prevent fraud upon the part of the insured against the insurer. If the testimony of Sinclair is true, the amount of the loss was definitely ascertained and adjusted with such books' and data as was submitted. The adjuster at the conclusion of his investigation was wholly satisfied, and so expressed himself. The amount of loss having been ascertained, the proofs of loss were no longer necessary ; and the adjuster stating that everything was all right, and that upon his arrival at Oklahoma City he would turn the matter in, and if it wasn't all right would phone, and if it was all right the money would be forthcoming in eight or ten days ; and all of these things occurring after the total amount of the loss had been determined, and there being no contention that the loss was not an honest loss, the evidence, it seems to us, was sufficient to go to the jury upon the question of whether or not the iron-safe, book, and inventory clauses had been waived.

The distinction in the cases as we view it is this: Where the insurer with full knowledge of the violation of the provision of the policy which entitled him to the right to exercise a forfeiture afterwards requests the insured to submit proofs of loss and go to unnecessary trouble and expense in the belief that the forfeiture has been waived, the forfeiture will be considered waived. But upon the other hand, if the insured comes into the knowledge of certain facts that may, if true, result in the right to exercise a forfeiture and the proofs of loss and other data are necessary in an investigation to determine these facts, the request to furnish them cannot be taken as a waiver of the forfeiture..

The former case is well illustrated in Rundell & Hough v. Anchor Fire Ins. Co., 128

Iowa, 575, 105 N. W. 112, 25 L. R. A. (N.S.) 29, where it was said by the court:

"The appellant contends, however, that the plaintiffs were bound to send in their proofs of loss, and that Kirkham did not therefore induce them to incur any expense or trouble which they need not otherwise have incurred. The fallacy of this argument is apparent, when we consider the fact that the plaintiffs knew, as well as the defendant, the condition of the contract, and that they could not recover thereon because of the loss of their books and inventories, and that such being the case they need not have incurred the expense of sending proofs of loss. Hence, if they sent them in response to Kirkham's request, and by so doing incurred expense or trouble, all of which the record showed they did, they are within the principle of the cases in which it has been held that similar acts constituted a waiver of the conditions of the policy."

The latter case is illustrated from the same state in Fitchpatrick v. Hawkeye Ins. Co., 53 Iowa, 335, 5 N. W. 155.

We therefore conclude that the court did not err in giving instructions No. 2 and 4, as above set out; that there was sufficient evidence to go to the jury upon the question of the waiver of the iron-safe, book, and inventory clauses in the policy; that it became a question of fact for the jury to determine, and the jury having determined it, the verdicts will not be disturbed.

The judgment of the district court will therefore be affirmed.

By the Court: It is so ordered.