## SPRINGFIELD F. & M. INS. CO. v. FINE et al.

No. 11210—Opinion Filed June 26, 1923.

(Syllabus.)

1. **Insurance — Action on Fire Policy — Breach of Conditions—Nonwaiver Agreement—Construction.**

In a suit on a fire insurance policy, where the provisions of the policy have been breached and the plaintiff relies upon a waiver of the breach, and the insurer contends that the acts alleged by the plaintiff as constituting a waiver cannot be considered as such because of the provisions of the nonwaiver agreement executed prior to the investigation of the loss. the stipulation of such nonwaiver agreement will not be extended by implication beyond the exact terms of the agreement.

2. **Same.**

The nonwaiver agreement executed in this case provided that the acts of the insurer while engaged in the investigation of the fire and the determination of the amount of loss should not be considered a breach of the conditions of the policy, and the provisions of such nonwaiver agreement will not be extended to include other acts of the insurer or adjuster except those performed while engaged in investigating the cause of the fire and the amount of the loss.

3. **Same—Waiver of Nonwaiver Agreement.**

The nonwaiver agreement may be waived itself by express agreement or conduct of the insurer, whether the nonwaiver agreement is contained in the policy or exists

separately, and may also be waived by the adjuster for the insurer.

**4. Same—Waiver of Breach of Conditions by Adjuster.**

The insurer will be held to have waived the breach of condition of the policy providing for a forfeiture for a failure to comply with the iron-safe, book warranty, inventory and proof of loss conditions of the policy where the acts of the adjuster show an intention to abandon or relinquish the right to forfeit the policy, and no new consideration is necessary, neither is it necessary that the acts should be sufficient to amount to equitable estoppel.

**5. Same—Extent of Waiver.**

Adjustment of loss by the adjuster of the insurer and agreement by him that the company would pay the face of the policy constitutes waiver of all breaches of conditions of the policy of which the insurer then had knowledge.

**6. Same—Instructions.**

Instructions examined. and held, to correctly state the law applicable to the facts in this case.

Error from District Court, Sequoyah County; John H. Pitchford, Judge.

Action by George W. Fine and others, as interveners, against the Springfield Fire & Marine Insurance Company on fire policy. Judgment for interveners, and defendant brings error. Affirmed.

Frye & Frye and Scothorn & Boardman, for plaintiff in error.

J. H. Jarman, for defendants in error.

COCHRAN, J. This action was commenced by Mosier Adjustment Company against A. P. Ball, and a garnishment summons was issued in said cause and served on the Springfield Fire & Marine Insurance Company. The insurance company filed an answer, with which answer the plaintiff took issue. George W. Fine et al. filed interpleas in said cause. Thereafter, the case of Mosier Adjustment Company was dismissed, and the cause proceeded to trial upon the interpleas of George W. Fine et al., and the answer of the insurance company thereto. Judgment was rendered for the interpleaders, and the insurance company has appealed. The interpleaders will hereinafter be referred to as plaintiffs and the insurance company as defendant.

The defendant, Springfield Fire & Marine Insurance Company, issued an insurance policy in the sum of $1,200 on a stock of merchandise of A. P. Ball, located at Marble City. This stock of merchandise was de-

stroyed by fire on October 17, 1914. The defendant denies liability because the assured failed to keep his books and inventory in a fire proof safe at night or in some place not exposed to fire which would destroy the building in which the stock of merchandise was located, and because of the failure to produce the books and inventories for the inspection of the company after the fire, and also because of the failure to furnish a proof of loss to the company as required by the terms of the policy.

The plaintiffs admitted that there had been a failure to comply with the terms of the policy requiring the books to be kept in an iron safe, or other place of safety from fire which might consume the building in which the stock of goods was located, and requiring that the books and inventories be presented to the insurance company upon demand, and the provision requiring proof of loss to be made within 60 days after the fire; but pleaded a waiver of these provisions.

The defendant contends that the evidence was insufficient to show a waiver of these provisions of the policy. The evidence of the plaintiffs shows that within 60 days after the fire occurred, defendant sent its adjuster to the scene of the fire, and, when he arrived, he demanded the books and inventory, and was advised by the insured that he could not produce them because they were destroyed by fire; but that he was willing to do anything he could to establish the honesty of the loss and to do anything asked of him. The adjuster then requested him to sign a nonwaiver agreement, which was signed by the assured and is in the following words:

"It is hereby mutually understood and agreed by and between A. P. Ball. of the first part, and the Springfield F. & M. Ins. Co. of Springfield, Mass., and other companies signing this agreement, party of the second part, that any action taken by said party of the second part in investigating the cause of fire or investigating and ascertaining the amount of loss and damage to the property of the party of the first part caused by fire alleged to have occurred on October 17, 1914, shall not waive or invalidate any of the conditions of the policy of the party of the second part, held by the party of the first part, and shall not waive or invalidate any rights whatever of either of the parties to this agreement.

"The intent of this agreement is to preserve the rights of all parties hereto and provide for an investigation of the fire and the determination of the amount of loss or damage without regard to the liability of the party of the second part.

"Signed in duplicate, this 11th day of November, 1914, Marble City, Oklahoma.

"A. P. Ball.

"Springfield F. & M. Insurance

"Company, of Springfield, Mass.

"By Thos. W. Burns."

The adjuster then made an investigation of the cause of the fire and an investigation for the purpose of ascertaining the amount of the loss and damage to the property of the insured. The insured procured and delivered to the adjuster affidavits of merchants of Marble City as to the estimated amount of the stock of goods, and he also delivered to him some duplicate invoices and advised the adjuster that he would make an effort to get duplicates of all invoices if he thought it was necessary; he talked to the adjuster at various times and finally the adjuster told him that he was satisfied as to the honesty of the loss, that he had seen the stock of goods before, as he had adjusted a loss on the building in which the stock of goods was located before that time, that he was confident on the least calculation that the insured had at least $2,000 worth of goods in the building; and the adjuster stated that he was satisfied with the proofs which had been submitted and that the company would pay the policy within a short time. The defendant contends that the acts of the adjuster, which have just been detailed, cannot be considered as a waiver of the conditions of the policy because the adjuster acted under the protection of the nonwaiver agreement. The nonwaiver agreement provided that the actions of the adjuster should not be considered a waiver only as to the action of the adjuster in investigating the cause of the fire and actions taken in investigating and ascertaining the amount of the loss, and the actions of the adjuster as to these matters cannot be considered as waiving the conditions of the policy. Plaintiffs' evidence shows that the adjuster, after investigating the cause of the fire and ascertaining the amount of the loss and after the insured had convinced the adjuster of the honesty of the loss, stated to the insured that he was satisfied as to the honesty of the loss and that he was confident that at the least calculation the insured had $2,000 worth of goods in the building; that he was satisfied with the proofs submitted and the company would pay the policy within a short time. These statements of the adjuster, after investigating the cause of the fire and the amount of damage, were not within the protection of the nonwaiver agreement, as a stipulation of a nonwaiver agreement will not be extended by implication beyond the exact terms of the agreement. 26

C. J. 339; Pa. Fire Ins. Co. v. Hughes, 108 Fed. 497; Pa. Fire Ins. Co. v. Draper (Ala.) 65 South. 925; Scottish Union & National Ins. Co. v. Colvard (Ga.) 68 S. E. 1097; Elliott v. Merchants & Bankers Ins. Co. (Iowa) 79 N. W. 452; Tinsley v. Aetna Ins. Co. (Mo. App.) 205 S. W. 78; Walker v. Phoenix Ins. Co. (N. Y.) 51 N. E. 392; Modlin v. Atlantic Fire Ins. Co. (N. C.) 65 S. E. 605; Beauchamp v. Retail Merchants Ass'n (N. D.) 165 N. W. 545; Petroff & Co. v. Equity Fire Ins. Co. (Iowa) 167 N. W. 660.

A nonwaiver agreement may be waived itself by express agreement or by acts or conduct, whether the nonwaiver agreement is contained in the policy or existing separately. Henderson v. Standard Fire Ins. Co. (Iowa) 121 N. W. 714; McMillian v. Insurance Co. of North America (S. C.) 58 S. E. 1020. In State Mutual Ins. Co. v. Green, 62 Okla. 214, 166 Pac. 105, this court said:

"Such agreements protect the company against a waiver of forfeiture of the policy or fraud on the part of the insured by acts or conduct of the agent acting under such agreement, but do not prevent a waiver by the company itself, where it accepts and ratifies the acts of its agent, or where it entered into a stipulation with the insured based upon the report of such an agent."

In Western Reciprocal Underwriters' Exchange v. Coon, 38 Okla. 453, 134 Pac. 22, it is held that a waiver of forfeiture in an insurance policy may be made by an adjuster, and this right of the adjuster to waive forfeitures has been extended to apply to a waiver of a nonwaiver agreement in American Central Ins. Co. of St. Louis v. Sinclair, 61 Okla. 17, 160 Pac. 60, where this court said:

"Measured by this rule Cooper had the authority as an adjuster to waive any of the rights of forfeiture in the policy. He acknowledged this right when he refused to proceed until a nonwaiver agreement had been executed after having ascertained that a right of forfeiture existed. If he had authority to enter into this contract for the companies, he also had the authority to waive it and to waive the provisions of the policy under which a forfeiture could be claimed."

In Queen of Arkansas Ins. Co. v. Laster (Ark.) 156 S. W. 848, the court said:

"When appellant's adjuster, in response to appellee's inquiry, said that he had 'all the proof he wanted,' this was a waiver of any further proof of loss on the part of the appellant, notwithstanding the nonwaiver agreement. It was equivalent to saying to the appellee that appellant was satisfied as to his loss and had all the information pertaining thereto that appellant desired."

In Scottish Union & National Ins. Co. v Cornett Bros., 42 Okla. 645, 142 Pac. 315, a nonwaiver agreement was executed, which was substantially the same as the one in the case at bar, but all the acts relied upon in that case to show waiver were performed in ascertaining the amount of the loss, and, although the court held that the forfeiture had not been waived, that case is not in conflict with the views above expressed.

In American Central Ins. Co. of St. Louis v. Sinclair, supra, this court said:

"The nonwaiver agreement provides that the acts of the adjuster while engaged in just two things shall not waive or invalidate the conditions of the policies. Those two things are the investigation of the cause of the fire and the investigation and determination of the amount of loss. There is no contention here that the loss was not an honest loss, but the plaintiff in error defends upon the ground that the provisions in the policies known as the iron-safe, book, and inventory clauses had been violated, and by reason thereof the policies had been forfeited. Forfeitures are not favored by the law, and one who seeks to protect himself by an agreement that his acts shall not be taken or construed as a waiver of a forfeiture which he is entitled to exercise must see to it that when he acts or makes statements he is engaged strictly in pursuit of those things provided for in the agreement, which under this agreement was the investigation of the cause of fire or the investigation and ascertainment of the amount of loss. The contract, being solely for the benefit of the insurer, will be strictly construed against the insurer."

It is next insisted that the acts of the adjuster which were not protected by the nonwaiver agreement are not sufficient to constitute a waiver. The argument on this question is that waivers are either express or implied, that express waiver must be upon consideration and implied waiver results from conduct and acts which indicate an intention to relinquish a right held or by such failure to insist upon it that the party is estopped afterwards to set it up against his adversary; and it is further argued that, inasmuch as there is no express waiver claimed in this case, an implied waiver will result only from such conduct as would create an equitable estoppel. Defendant then cites numerous cases from this court in which the essential elements of equitable estoppel are set out. It is not necessary to review those cases, as in our opinion it is not necessary in order to create an implied waiver of provisions of an insurance policy for the conduct and acts to be sufficient to create equitable estoppel. The acts of the adjuster in this case, which were not protected by the nonwaiver agreement,

are substantially the same as those in the case of the American Central Ins. Co. of St. Louis v. Sinclair, supra, and in holding that these facts were sufficient to send the case to the jury on the question of waiver, this court said:

"The iron-safe, book, and inventory clauses in the policies were primarily for the purpose of ascertaining the amount of the loss should one occur, and to prevent fraud upon the part of the insured against the insurer. If the testimony of Sinclair is true, the amount of the loss was definitely ascertained and adjusted with such books and data as was submitted. The adjuster at the conclusion of his investigation was wholly satisfied and so expressed himself. The amount of loss having been ascertained, the proofs of loss were no longer necessary; and the adjuster stating that everything was all right, and that upon his arrival at Oklahoma City he would turn the matter in, and if it was not all right would phone, and if it was all right the money would be forthcoming in eight or ten days; and all of these things occurring after the total amount of the loss had been determined, and there being no contention that the loss was not an honest loss, the evidence, it seems to us, was sufficient to go to the jury upon the question of whether or not the iron-safe, book, and inventory clauses had been waived."

Defendant calls attention to the following language in this opinion:

"The distinction in the cases as we view it is this: Where the insurer with full knowledge of the violation of the provision of the policy which entitled him to the right to exercise a forfeiture afterwards requests the insured to submit proofs of loss and go to unnecessary trouble and expense in the belief that the forfeiture has been waived, the forfeiture will be considered waived. But upon the other hand, if the insured comes into the knowledge of certain facts that may, if true, result in the right to exercise a forfeiture and the proofs of loss and other data are necessary in an investigation to determine these facts, the request to furnish them cannot be taken as a waiver of the forfeiture.'"

This language is not in conflict with the preceding paragraph of the opinion, and is a correct statement of the distinction to be made between certain acts which are held not to constitute a waiver, because made in carrying out the investigation, and those held to be waivers because made with the intention to waive the forfeiture. The court held that there was no error in giving instruction No. 2, in which the court instructed as follows:

"You are instructed that if you believe from the evidence by a fair preponderance

thereof that after the execution of said non-waiver agreement, the plaintiff and the adjuster for the defendant companies ascertained the amount of the loss suffered by the plaintiff and the amount due thereon, and agreed that the defendant companies would pay the same, then you should find for the plaintiff on each several policies against the defendant company writing the same for the amount of loss which you may find him to have suffered thereunder * * *"—and it thus appears that in approving this instruction this court held that facts substantially the same as in the case at bar are sufficient to constitute a waiver.

The contention of defendant that the acts of the adjuster must be sufficient to constitute an equitable estoppel finds support in the case of Hawkins v. Smith (Idaho) 205 Pac. 188, the third paragraph of the syllabus being as follows:

"Waiver is the voluntary abandonment or relinquishment by a party of some right or advantage, and does not necessarily depend upon any new or additional consideration. But in such a case it must appear that the adversary party has acted in reliance upon such waiver and altered his position so that he will be prejudiced in order to prevent the party not in default from treating the contract as discharged or from declaring the contract discharged"

—and also in the case of Globe Mutual Life Ins. Co. v. Wolf, 95 U. S. 326; but our court has clearly distinguished between waiver and estoppel.

In Northwestern Nat. Life Ins. Co. v. Ward, 56 Okla. 188, 155 Pac. 524, a portion of the syllabus is as follows:

"A distinction is drawn between 'waiver' and 'estoppel' when the two doctrines are discussed in their purely technical aspect. Waiver involves the notion of an intention entertained by the holder of some right to abandon or relinquish instead of insisting on the right. An estoppel arises when the purpose or natural consequence of a person's representations or conduct is such as to induce another person to do or to omit some act the doing or omission of which would turn out to his detriment and to the inducing party's benefit if the latter were permitted to take advantage of it. Such estoppel more often carries with it the implication of fraud than does waiver."

In order to constitute a waiver, it is neither necessary that an agreement be supported by a new consideration nor that the facts should be such as to create an estoppel. In Kiernan v. Dutchess County Mut. Ins. Co., 150 N. Y. 190, 44 N. E. 698, it is said:

"While express waiver rests upon intention, and estoppel upon misleading conduct, implied waiver may rest upon either; for it exists when there is an intention to waive unexpressed but clearly to be inferred from circumstances, or when there is no such intention in fact, but the conduct of the insurer has misled the insured into acting on a reasonable belief that the company has waived some provision of the policy. * * * While the principle may not be easily classified, it is well established that if the words and acts of the insurer reasonably justify the conclusion that, with full knowledge of all the facts it is intended to 'abandon and not to insist upon the particular defense afterwards relied upon,' a verdict or finding to that effect establishes a waiver, which, if it once exists, can never be revoked."

In Bowman v. Surety Fund Life Ins. Co. (Minn.) 182 N. W. 991, the court said:

"The principle applied in Hendrickson v. Grand Lodge, 120 Minn. 36, 138 N. W. 946, is substantially controlling. Waiver was there defined as 'an intentional relinquishment of a known right.' And there, as in this case, the company after death and with knowledge of the ground of forfeiture requested and received proofs of death. The conduct of the defendant evidenced a purpose to pay, was consistent with the continuance of the policy in force and inconsistent with a forfeiture, and justified the jury's finding of a waiver."

In Draper v. Oswego County Fire Relief Ass'n (N. Y.) 82 N. E. 755, a portion of the syllabus is as follows:

"The doctrine of waiver as applied to insurance is invoked to relieve against forfeitures and no consideration is required nor any prejudice or injury to the other party."

While acts of the insurer constituting an equitable estoppel will amount to a waiver of the provisions of an insurance policy, yet a waiver may also result where the essentials of an equitable estoppel do not exist and where there is no new consideration supporting the same if the facts are such as to show an intention to abandon or relinquish the right to forfeit the policy. According to the plaintiffs' testimony, an adjustment of the loss was made, resulting in a final understanding and an agreement to pay the face of the policy. This has been held to constitute a waiver of all the breaches of conditions in the policy of which the insurer then knew or ought to have known. 26 C. J. sec. 419; Concordia Fire Ins. Co. v. Koretz (Colo.) 60 Pac. 191; Tillis v. Liverpool & London & Globe Ins. Co. (Fla.) 110 A. S. R. 89; Ill. Mutual Fire Ins. Co. v. Archdeacon, 82 Ill. 236, 25 A. R. 313; St. Paul Fire & Marine Ins. Co. v. Mountain

Park Stock Farm Co., 23 Okla. 79, 99 Pac. 648; American Central Ins. Co. of St. Louis v. Sinclair, 61 Okla. 17, 160 Pac. 60.

Defendant complains of the giving of instruction No. 3, which in substance stated that if the issuing agent of the defendant company knew at the time he wrote and delivered the policy in controversy and accepted the premium thereon that the insured had no iron safe and that he was advised the insured would not have an iron safe in which to keep the books and records, such facts constituted a waiver of the provisions of the policy requiring the insured to keep his inventory and books in an iron safe. This instruction follows the decision of this court in Scottish Union & National Ins. Co. v. Cornett Bros., supra. The defendant contends that this instruction is erroneous because the jury would be warranted in finding that the book warranty and inventory provisions of the policy were also waived. We are of the opinion that this instruction is not subject to that construction.

Defendant also complains of instruction No. 4, because the trial court in this instruction told the jury that if the adjuster who was sent to the scene of the fire by the defendant, after making his investigation and arriving at the amount of the loss, stated that he was satisfied with the examination he had made and with the proofs of loss furnished, and that a settlement of said insurance policy would be made by said insurance company, and the insured and these plaintiffs relied upon said statements by said adjuster and believed them to be true, then, in that event, said clauses in said insurance policy requiring the insured to make an inventory of his stock and to keep a set of books showing a record of the business transacted, including purchases, sales, and shipments of such stock, both for cash and credit, and to produce the same to said insurance company, were waived, and it erred in referring to the proofs of loss furnished, and says that there was no evidence that any proof of loss was submitted to the adjuster and no contention made that proof of loss had been submitted, and that this statement was misleading. It is true that there is no evidence that any formal proof of loss was submitted to the adjuster or the company, but the proof of loss referred to in this instruction had reference to the proof which had been made and offered to the adjuster during his investigation, and we do not think the jury could have been misled by this statement. There is no reason for believing the jury considered that this language of the court had reference to the

formal proof of loss instead of the proof submitted to the adjuster and upon which he made his finding that he was satisfied and that no further proof was required and that the company would pay the loss.

Objection is further made to this instruction that it disregarded the effect of the nonwaiver agreement. While the instruction does not refer to the nonwaiver agreement, instruction No. 3, considered in connection with instruction No. 6, shows clearly that the nonwaiver agreement was not disregarded by the court, but, instead of calling attention to the nonwaiver agreement, the court simply limited the consideration of the jury to the facts which were not covered by the nonwaiver agreement in determining whether the provisions of the policy had been waived.

Instruction No. 6 was as follows:

"You are instructed that if you find from the evidence in this case that the defendant company, through its adjuster, Burnes, did not agree to settle said loss or recommend to said company that said loss be settled but only requested that the said A. P. Ball submit an offer of compromise, which said adjuster offered to submit to the company with recommendations, that the same would not constitute a waiver of the conditions of the policy hereinbefore mentioned and your verdict should be for the defendant."

The court thus clearly eliminated from the consideration of the jury the acts of the adjuster in ascertaining the cause of the fire and investigating the amount of the loss, and limited the question of waiver to the acts of the adjuster in adjusting the loss and agreeing to recommend its payment after he had completed his investigation under protection of the nonwaiver agreement.

Other objections to the instructions are urged, but these objections have been disposed of in our consideration of instructions 3 and 4.

There being no prejudicial error in the record, the judgment of the trial court is affirmed.

JOHNSON, C. J., and McNEILL, NICHOLSON, and MASON, JJ., concur.