MANDELTHORD ET AL. *v.* THE UNION INDEMNITY CO.

424

(Decided September 17, 1928.)

*Messrs. Siegel & Siegel*, for plaintiffs in error.
*Mr. A. E. Sweigert*, and *Messrs. Lieghley, Halle, Haber & Berick*, for defendant in error.

SULLIVAN, P. J. The plaintiff Isaac Mandelthord brought an action against the Union Indemnity Company for the recovery of $1,000 alleged to be due upon what is known as a "burglary and robbery policy," and the claim was made that on March 26, 1927, plaintiff had been robbed of an amount in excess of that named in the policy. The answer of defendant raised two grounds of affirmative defense. First, that the plaintiff had willfully given a false answer to a question set forth in schedule 11 of the policy to the effect that assured had not sustained any similar loss within the last five years, whereas it was averred that as a matter of fact such a loss had been sustained within a period of two years; second, that the insured violated section 6 (d) of the special agreement contained in the policy, from which we quote as follows: "The company shall not be liable for any loss unless books and accounts are kept by the assured and the loss can be accurately determined therefrom by the company."

A verdict for defendant was directed upon motion of defendant, the ground given being the violation

of the clause relating to books and accounts above quoted. Therefore the question arises, "Did the court commit prejudicial error by directing a verdict for the defendant, because of the failure to comply with the provisions of this clause?"

Evidence was offered in the way of an exhibit consisting of a single sheet of paper written on both sides by plaintiff, which plaintiff claims, through able counsel, is a sufficient fulfillment of the requirement that plaintiff shall keep books and accounts which accurately determine the property on hand and the loss arising because of the robbery.

We have examined the sheet of paper, and the evidence of the plaintiff in connection therewith, and have come to the conclusion that the account is so vague and indefinite as to the property which plaintiff had on hand at the time of the robbery, and which they claim was stolen, that it is impossible, accurately or otherwise, to determine the amount of the loss under the policy. It is admitted that this sheet of paper is the only written evidence presented that in any manner attempts to conform to that clause in the policy which requires the keeping of books and accounts so that an accurate determination may be made of the property on hand and the property stolen.

If the contents of the exhibit in question furnished accurate information, by which the loss could be determined, it is our judgment that the fact that the exhibit is a sheet of paper, instead of a book, would not be sufficient to defeat the policy. We think that the conditions of the policy would then have been practically fulfilled, but the exhibit has no such character, and from the evidence of plaintiff, bearing

upon the exhibit, it is clear that he himself was not able to determine from the exhibit itself, with the accuracy required by the provisions of the policy, the loss of the nine diamonds in question.

We think that the authority laid down in *Scottish Union & National Ins. Co.* v. *Cornett Bros.*, 42 Okla., 645, 142 P., 315, is law applicable to the state of the record herein: "As stated above, *a provision in a policy requiring the keeping of books and inventories is essentially a greater benefit to the insured than to the insurer.* Should he comply with such provisions and keep his accounts and books and inventories straight and correct so as to be able at any time after sustaining a loss by fire to show exactly what his loss consisted of, there would be no excuse for insurance companies denying liability, and we believe in such cases none would be offered. To sustain or uphold such flagrant disregard of the material provisions of an insurance policy, and after such disregard allow the insured to come into court and recover upon *proof of loss made from scraps of memory and memoranda, and inventories picked up hither and thither, would be to impose an unjust burden upon those who insure in good faith and faithfully endeavor to comply with the provisions of their policies."*

In the absence of books and accounts required by the policy, we turn to the evidence of plaintiff, and it is impossible to reach any conclusion other than that the oral testimony fails to furnish the information required as to the loss sustained. As to the competency of the evidence we have serious doubts. Certainly it cannot take the place of the books required by the clause in the policy, and, if the

evidence is not competent, and the exhibit above discussed is not of sufficient accuracy, then we think it follows that *Home Ins. Co. of New York* v. *Williams* (C. C. A.), 237 F., 171, applies, from which we quote, at page 176, as follows: "The iron safe clause obligated the insured to keep such a set of books as would enable the insurer to determine from the books and papers submitted to him with reasonable certainty the stock of goods on hand at the time of the fire *without recourse to oral testimony,* except as to the method of keeping said books. No particular method of bookkeeping is required, but the books must themselves furnish the information with reasonable certainty, *unaided by oral testimony,* except as above indicated. * * * Outside evidence may be received, the surrounding circumstances, the subject-matter, * * * the method of keeping the books, and the evidence of expert bookkeepers to explain the entries found in the books and as to what the books themselves show. *But such oral testimony cannot be received to supply omissions in said books."*

We do not think there is anything unreasonable in the requirement of such a clause in what is known as a "theft policy," because the property is of a shifting nature, and it is impossible, except by an accurate system of bookkeeping, to determine the amount of stock on hand each day and the amount constantly disappearing under the exigencies of trade.

We think the law governing this case, upon this point, is found in *Phœnix Ins. Co.* v. *Sherman,* 110 Va., 435, 438, 66 S. E., 81, 83: "There is nothing unreasonable in the requirements of the 'iron safe

clause' found in every policy of insurance issued on a shifting stock of merchandise. Under that clause the insurer has a right to such a compliance with its terms as will inform him during the life of the policy, fairly and intelligently, as to the stock of merchandise carried by the insured, and, in case of loss by fire, as to the stock of merchandise burned and the fair cash value thereof; and it is no hardship upon the insured to comply with this requirement of his policy. *Any other rule would open wide the doors for the perpetration of frauds* and the grossest impositions upon insurers.''

This rule instead of being a hardship on the insured is a benefit, and more so to him than the insurer, because a compliance with the rule keeps him accurately posted on the amount he is entitled to recover whenever there is a loss of his property under the terms of the policy.

When a system of books is established, furnishing the accuracy required, it would indeed be hazardous for the insurance company to deny liability, and the probability is that under the frowning proof of accurate books and accounts no denial of liability would be projected by the company to defeat a recovery under the policy. Such books and accounts accurately kept are a pronouncement of the good faith of the insured, and unless this be done an unjust burden would be imposed upon the insurance company, because it would be at the mercy of the memory or the bad motive of those who seek to recover upon policies of this character. This doctrine is established in *Scottish Union & National Ins. Co.* v. *Cornett Bros., supra.*

The plaintiff in error quotes Section 9391, Gen-

eral Code, where it is said that the insurance company may not avail itself of certain defenses, such as misrepresentations and failure to comply with the conditions of the policy. This statute reads as follows: "Sec 9391. No answer to any interrogatory made by an applicant, in his or her application for a policy, shall bar the right to recover upon any policy issued thereon, or be used in evidence upon any trial to recover upon such policy, unless it be clearly proved that such answer is wilfully false, was fraudulently made, that it is material, and induced the company to issue the policy, and that but for such answer the policy would not have been issued; and, also that the agent or company had no knowledge of the falsity or fraud of such answer."

We think the record in the case is sufficient to show that the absence of the books and accounts is material, and there is no conclusion that can be drawn from the record than that the company would not have insured the plaintiff, had it known that he would not comply with that clause in the policy requiring books and accounts of an accurate nature to be kept in order to determine the loss, and it is obvious that this is so, for the insurance company would not imperil itself by engaging to pay losses on insurance policies without any accurate data except such as depended upon the memory of the insured. This is especially true when, coupled with a bad memory, there might be an impure motive. There is no evidence in this case, however, of impure motives, and the defendant relies solely upon a failure to comply with the conditions of the policy with reference to books and accounts.

Holding these views, the judgment of the lower court is hereby affirmed.

*Judgment affirmed.*

VICKERY and LEVINE, JJ., concur.