## FARRIS v. COMMERCIAL UNION FIRE INS. CO.

No. 25688.   Feb. 4, 1936.

Rehearing Denied March 17, 1936.

Twyford & Smith and William J. Crowe, for plaintiff in error.

Rittenhouse, Webster & Rittenhouse for defendant in error.

BUSBY, J.  This is an action by John Farris to recover a money judgment on a policy of fire insurance issued by the defendant, Commercial Union Fire Insurance Company of New York. At the conclusion of the evidence the trial court dismissed the jury, made special findings of fact, and rendered judgment for the defendant company. The plaintiff presents the case for review, appearing herein as plaintiff in error. We shall continue to refer to the parties by their trial court designation.

The plaintiff, John Farris, a resident of Oklahoma City, was, on the 23rd day of May, 1924, the owner of a building situated in the then growing oil field town of Cromwell, Okla. On the date stated he procured from the defendant company, through its agent. the Shawnee Insurance Agency, a $500 policy of fire insurance covering his building for a period of one year. The building, which was worth $700, was destroyed by fire about midnight on December 13, 1934, within the period of the policy, unless, as is contended by the defendant, the same had been terminated by cancellation or mutual agreement prior to that date.

The policy contained the usual provision authorizing the cancellation of the policy by the insurer on five days' written notice, which, of course, means five days from the receipt of such notice by the insured.  14 R. C. L. 1009, par. 187. No other provision referring to cancellation is called to our attention by the parties to this litigation.

Pursuant to instructions received from the defendant company, its agent wrote the plaintiff on December 10, 1924, as follows:

"Shawnee, Okla., December 10th, 1924.
"Mr. John Farris,
   "1300 W. 10th, Street,
      "Oklahoma City, Okla.

"Dear Sir:  Re: Commercial Union F-322

"We regret to advise that the Commercial Union Insurance Company has requested cancellation of all their policies in Cromwell so we will be compelled to cancel the above policy on the pro rata basis. There is a return premium due you of $.04 payment of which you will find enclosed herewith.

"We are enclosing herewith the regular form of cancellation notice and sending this letter to you by registered mail to comply with the requirements of your policy and ask that you send the policy to us by return mail.  If we are successful in placing this line with one of our other companies we will advise you by letter or 'phone.

"Regretting that we could not continue this policy, we beg to remain, Yours very truly, Shawnee Insurance Agency H. A. Pierson, Mgr.  4 cents stamp enclosed."

The notice of cancellation enclosed with the letter read:

"Notice of Cancellation.

"December 10th, 1924.

"Mr. John Farris,
   "1300 W. 10th, Street,
      "Oklahoma City, Oklahoma

"Dear Sir:

"In compliance with instructions received from the Commercial Union Fire Insurance Co. of New York, we hereby notify you that we respectfully cancel its policy No. F-322 issued by us, as agents of the said company, on May 23rd, 1924, covering on your building located on Lot 4, Block 17, Cromwell, Okla., in the amount of $500.00 as described in said policy, **in accordance with the conditions contained in the said policy,** and that we hold the unearned premium thereon (if any) subject to your order. Check for return premium enclosed herewith. **Please return this policy to our office at your early convenience and oblige.** Yours respectfully, Shawnee Insurance Agency By H. A. Pierson Mgr." (Emphasis ours.)

The letter with the inclosed notice was received by the insured on December 13, 1924, the day of the fire.

In accord with the request contained in the "Notice of Cancellation" the insured returned the policy with the following letter a few hours before the fire:

"December 13, 1924.

"Shawnee Insurance Agency,
   "122 N. Bell St.,
      "Shawnee, Okla.

"Gentlemen:

"Yours of the 10th inst., with enclosed notice of cancellation of Commercial Union Policy No. F322, received. As per your request I am herewith enclosing said policy. I trust you will be able to place this insurance with some other line. Yours very truly, J. Farris."

The question then is: Was the policy in force for five days subsequent to the receipt of notice of cancellation by the insured, or was it terminated by his act of surrendering the policy for cancellation.

A contract of insurance may be terminated by mutual agreement of the parties as well as by cancellation in accord with the provisions of the policy. A termination by mutual agreement is in itself a contract, and like other contracts requires a meeting of the minds of the parties. Such termination by mutual agreement may be inferred from a surrender of the policy under circumstances indicating an intent to immediately cancel the same. However, as is said in 14 R. C. L. 1016:

"The courts appear to be unanimous in holding that the mere physical surrender of a policy by the assured does not terminate the contract, but that the question is one of intent to be gathered from all the facts and circumstances conected with the physical act of surrender."

In this case the cancellation, according to the notice of the company, was to be "**in accordance with the conditions** contained in said policy," which, by reference to the policy, meant cancellation five days after receipt of the notice by the insured.

The fact that the letter accompanying the notice of cancellation contained a request that the insured "send the policy * * * by return mail" and the notice itself contained a similar request for a return of the policy did not indicate an intent on the part of the company to treat such immediate return of the policy, if made, as an immediate cancellation. On the contrary, the relation of such requests to the remainder of the communication indicates that such return of the policy was to be treated as merely a method of carrying out the cancellation thereof at the end of five days according to the conditions of the policy. Nor do we think the letter of the insured indicates anything other than a recognition of the power of the company to cancel the policy on five days' notice and a willingness on the part of the insured to abide by the five-day cancellation provision of the policy. The reasoning of the Wisconsin court in discussing a similar situation in the case of Wicks Bros. v. Scottish Union & National Ins. Co. (Wis.) 83 N. W. 781, at pages 782-783, is applicable to the case at bar. It was therein said:

"If the company was still to represent him in the matter of securing other insurance, the return of the policy to it was certainly consistent with the idea that they should hold the policy for him until the time limited for cancellation had expired. In absence of proof of express notice that the defendant desired to vary the stipulation for cancellation, the inference arising from the conduct of the parties points strongly towards this conclusion. The risk was undesirable, and it was difficult to secure insurance. The assumption that it was McBean's intention to assent to immediate cancellation does violence to his business judgment. He is presumed to know of plaintiffs' rights under the policy, and, under the circumstances, it is quite reasonable to assume that by sending the policy to them he intended nothing more than that they should hold it for cancellation under its terms. There is a lack of any circumstance tending to show an intention to surrender for instant cancellation. Every probability tends the other way."

See, also generally, Artificial Ice Co. v.

Reciprocal Exchange, 192 Iowa, 1133, 184 N. W. 756; Home Ins. Co. of New York v. Chattachochee Lumber Co. (Ga.) 55 S. E. 11; 26 C. J. p. 143, par. 168.

The case of Liverpool, London & Globe Ins. Co. v. Tharel et al., 68 Okla. 307, 174 P. 773, is not, as is contended by defendant, contrary to the views herein expressed. That case involved the surrender of a policy on oral request without a return of premium. Such surrender was held to constitute a waiver of written notice and of the right to a return of premium prior to cancellation. The loss in that case did not occur until more than five days after the surrender of the policy.

Waiver is the intentional surrender of a known right. American Cent. Ins. Co. of St. Louis, Mo., v. Sinclair, 61 Okla. 17, 160 P. 60; Ketcham v. Oil Field Supply Co., 99 Okla. 201, 226 P. 93.

There is in this case no evidence of an intent on the part of the insured to waive the five days' time allowed by the contract for cancellation of the policy.

The other material facts as recited in this opinion being conclusively established by the evidence and recognized by the findings of the trial court, the decision of the trial court is reversed, with directions to enter judgment for the plaintiff.

McNEILL, C. J., and RILEY, PHELPS, and GIBSON, JJ., concur.