Roberts, Willis & Taylor Co. et al. v. Sun Mutual Insurance Co.

Same v. Lancashire Insurance Co.

No. 881.

**1.  Fire Insurance Policy—Waiver by Agent—Iron Safe Clause.**
The requirements of the "iron safe clause" in a policy of insurance cannot be waived by an agent of the company, where the power to do so is by the terms of the policy expressly withheld from him.

**2.  Same—Waiver by Adjuster—Evidence.**
An insurance adjuster, after being informed of the destruction by fire of the ledger, scratch book and itemized inventory of the insured, declined to proceed with the investigation of the loss until the insured agreed that such examination "shall not be taken as any waiver of any defense the companies may have by reason of the breach of warranty as contained in the iron safe clause, we having lost our detailed inventory." Held, that this was evidence tending to prove a waiver of the requirement to produce the books other than the detailed inventory, as was also the further fact that the adjuster, after making an estimate of the loss pursuant to such agreement, applied to plaintiffs, to whom the policies had been assigned, for duplicate invoices of purchases of the goods.

**3.  Same—Inventory.**
The requirement in a policy of insurance for the production of an inventory, is sufficiently complied with by the production of a summarized inventory as entered in a ledger.

**4.  Same—Waiver by Adjuster After Loss.**
After an insurance policy has become a demand against the company, a limitation in the policy of the power of an agent to waive its conditions does not apply to an adjuster.

**5.  Same—Breach of Iron Safe Clause—Insurance on House.**
While a breach of the iron safe clause will forfeit an insurance policy so far as it covers the stock of goods, it will not have such effect as to the store house, where the amounts of insurance on each of the two kinds of property are separately stated, though the premium is in gross.

Appeal from Grayson.  Tried below before Hon. Don A. Bliss.

*E. C. McLean* and *J. T. Cunningham*, for appellants.—1.  It was error in the court to not submit to the jury, as a question of fact, as to whether the defendants had waived the "iron safe clause." Brown v. Insurance Co., 74 Iowa, 425, 38 N. W. Rep., 135; Stone v. Smith, 30 Texas, 145; Webster v. Insurance Co., 36 Wis., 67; Insurance Co. v. Brown, 24 Ill., 224, 12 West. Rep., 815, 15 N. E. Rep., 166; Insurance Co. v. Pulver, 20 N. E. Rep., 18; Cleaver v. Insurance Co., 71 Mich., 414, 15 West. Rep.

2.  It was error in the court to not permit the plaintiffs to prove that among business men and book-keepers the word "inventory," in the policy of insurance, read in evidence, was universally considered by them to mean the footing or sum total for the stock of merchandise had on hand at any particular date, and that the itemized list of all the goods, with the prices or value of each article and the carrying out of the sum that the number of articles amounted to at the price, was termed the invoice, and that the sum total of all the sums thus carried out, when

added together and entered in the ledger, was an inventory, and that the word "inventory" applied to the entry in the ledger, and not to the itemized list of all the articles. Woods on Fire Ins., secs. 486, 501; Roberts v. Short, 1 Texas, 373; Taylor v. McNutt, 58 Texas, 71; Pitney v. Insurance Co., 65 N. Y., 6; Wodworth v. Insurance Co., 42 N. Y. S. Rep., 765, 29 N. E. Rep., 1104; 132 N. Y., 140; Houghton v. Insurance Co., 131 Mass., 300; Texas Banking Co. v. Hutchins, 53 Texas, 61; Fowler v. Insurance Co., 7 Wend., 270; Wall v. Insurance Co., 14 Barb., 383; Daniels v. Insurance Co., 14 Cush., 416; Mooney v. Insurance Co., 138 Mass., 375.

3. It was an error in the court to hold as it did and instruct the jury to find for the defendant, for the reasons that, even though said iron safe clause was a part of the policy and a warranty, and even though the insured had not complied with it, this said clause would not embrace the house and fixtures, and plaintiffs are entitled in any event to a judgment for the value of said house and fixtures. Rev. Stats., art. 2971; Landman v. Insurance Co., 19 Ins. Law Journal, 572; Insurance Co. v. Bills, 29 S. W. Rep., 1063.

*Morgan & Thompson,* for appellees.—1. There being no ambiguity about the meaning of the term inventory, nor any pleading claiming that the same was used in a technical sense or in any sense other than its usual and customary meaning, testimony seeking to place upon it a technical meaning, or a meaning other than its usual and customary meaning, was properly excluded. Burke v. Ward, 32 S. W. Rep., 1047.

2. The contracts of insurance being issued for the gross premiums of $45 in the one case and $30 in the other, all the property being subject to the same hazard, each providing that the policy should be void if the iron safe clause was not complied with, the contracts were entire, and a failure to comply with the terms of the iron safe clause avoided the policies, not only as to the stock, but also as to the other items insured under the Sun Mutual policy. Insurance Co. v. Ward, 26 S. W. Rep., 763; Geiss v. Franklin, 18 Am. St. Rep., 324; McWilliams v. Cascade, 34 Pac. Rep., 140; Thomas v. Commercial Union, 37 N. E. Rep., 672.

FLY, ASSOCIATE JUSTICE.—In the above cases, which have been consolidated for the purposes of this appeal, appellants, as assignees of Burge & Allen, the parties insured, brought suits to recover on two insurance policies executed by the respective insurance companies, one being for $1500 on a stock of general merchandise, the other for $600 on the same personal property, and for $400 on the frame house in which the merchandise was contained. The policies were assigned to appellants after the loss. The case was tried, with a jury, and the judge instructed the jury that "The undisputed testimony in this cause showing that Burge & Allen, the insured, by whom the policy sued on in this case was assigned to plaintiffs, failed to observe the terms of what is

called the iron safe clause in said policy, and there being no evidence before you of a waiver by the defendant of the terms of said clause, you are instructed to find a verdict for the defendant."

It appears that Burge & Allen had no iron safe, but, to comply with the requirements of the clause in their policies, would take their books home with them at night. The date of one of the policies, was November 28, 1891, and that of the other April 29, 1892. A detailed inventory of the property was taken in March, 1892, and the following summary of it was entered in a ledger, to-wit:

March 1, 1892.  Dry goods, boots, shoes and clothing........$1210.00
                Groceries and hardware......:............  800.00
                Drugs and medicines....................  400.00
                Jewelry................................  350.00
                Books and stationery...................  100.00
                Fixtures.....  ............,...........  156.00
                                                        _____
                Total...........................$3035.49

This was the last inventory taken by them. The detailed inventory was destroyed by fire, the summarized inventory was produced after the fire. Burge & Allen placed their original entries in scratch books from which the credit sales of the day were on each night copied into a ledger, and the cash sales into a cash book. The book containing the totals of pur- chases and from whom bought, were also kept in a book, which was pro- duced after the fire. One of the scratch books containing the original entries of the beginning of Burge & Allen for several months after March 1, 1892, and also a ledger designated as "D," to which the original entries of credit sales from January 1, 1892, to August 1, 1892, were transferred, were destroyed by the fire. On August 1, 1892, Burge & Allen began using a new ledger, called "E," and in this they placed the balances from ledger "D," as well as the entries from the scratch books. Ledger "E" was produced after the fire.

The entry of the balances from the old ledger, and the production of the book containing the same after the fire, was not a compliance with the demands of the iron safe clause, and that clause being a promissory warranty, the policy was forfeited, unless the forfeiture was waived by the insurance companies.

The first and second assignments of error are presented together by appellants, the first insisting on a waiver of the iron safe clause by the agent at the time the policy was issued; the second claiming a waiver by the adjuster after the loss had occurred. We will consider them in their order.

It is provided in the policy that the agent of the insurance companies should not have the authority to waive the requirements of the "iron safe clause," and the waiver of the agent, Abernathy, if it was made, could have no effect in relieving Burge & Allen, the persons insured, from complying with the provisions of the clause. No authority was

given to waive the requirements of the clause in question, and more than that, the authority to waive was expressly withheld from the agent. That an agent can bind his principal only within the scope of his authority, is an elementary proposition. Burge & Allen had full notice of the limited powers of the agent. Insurance Co. v. Wagner & Chabot (Texas Civ. App.), 30 S. W. Rep., 959; Insurance Co. v. Waters (Texas Civ. App.), 30 S. W. Rep., 576; Insurance Co. v. Kempner, 87 Texas, 229; Bank v. Insurance Co., 62 Texas, 466; Egan v. Insurance Co. (Oregon), 42 Pac. Rep., 611; Fitzmaurice v. Insurance Co., 84 Texas, 61; Quinlan v. Insurance Co., 31 N. E. Rep., 31, 133 N. Y., 356. The policy permitted the books to be kept in some house other than the store, outside of a safe.

After the destruction of the property, one Landeau was sent by the insurance companies to the scene of the fire to investigate the loss. After he had ascertained from Burge & Allen that the itemized inventory, and a certain scratch book, and ledger "D," had been destroyed by the fire, he refused to proceed further in the investigation, whereupon Burge & Allen requested him to proceed, and Landeau then wrote the following instruments, which Burge & Allen signed, to-wit:

"ECTOR, TEXAS, December 15, 1892.

"We, the undersigned, W. R. Allen and J. T. Burge, constituting the firm of Allen & Burge, of Ector, Fannin County, Texas, have requested C. H. Landeau, adjuster of the Lancashire Insurance Co., of England, and the Sun Mutual Ins. Co., of N. O., to make examination of our books, invoices and other data, to determine, if possible, the probable loss and damage we may have sustained by reason of fire of November 25, 1892, destroying our property, and we hereby agree that such examination and investigation shall not act or be taken as any waiver, direct or implied, of any defense the companies may have or claim by reason of the breach of warranty as contained in the iron safe clause, made a part of the policies, we having lost our detailed inventory, and only having a memorandum of the amount." At this time the policy had been transferred to appellants by Burge & Allen, but Landeau, immediately afterward, it seems, informed appellants of what had occurred, and they ratified the acts of Burge and Allen. On this ground, if no other, there was no error in admitting the agreement in evidence. At the time the agreement was written by Landeau, he was the agent of the two insurance companies, by virtue of the provisions of article 2943a, Sayles' Civil Statutes. He had been fully informed that the scratch book and ledger "D" had been destroyed, and with those facts before him, he wrote the agreement, and it is plainly implied that the only ground that was reserved by the company, on which they claimed a forfeiture, was a failure to produce the detailed inventory. He therefore in the agreement contracted against a waiver by his investigation in so far as the iron safe clause was affected by the destruction of the detailed inventory. This was evidence of a waiver on his part of any

forfeiture that might arise by reason of the destruction of the books. It had the effect of saying, "we do not object to paying the loss on the goods on any grounds except the failure to produce the detailed inventory." If they saw fit to rest their claim for forfeiture, with full knowledge of all the facts, on this point, and to enter into a new contract to that effect, they are bound by it. Smith v. Insurance Co., 62 N. Y., 85; Insurance Co. v. Mich., 53 N. Y., 144; Wood, Ins., sec. 450. The violation of any of the conditions of the policy may be waived by the insurer, and a waiver may be implied from the acts and conduct of the insurer after knowledge that such conditions have been broken. Wood, Ins., sec. 525, p. 1151; Titus v. Insurance Co., 81 N. Y., 410.

The evidence shows that after the investigation made by Landeau by virtue of the agreement with Burge and Allen, he went to appellants and applied to them for duplicate invoices of purchases of goods that had been destroyed by the fire. This action was independent of the estimate of damages made under the agreement with Burge & Allen, and indicated that the companies were not disposed to claim a forfeiture, but were treating the policy as still effective. Brown v. Insurance Co. (Iowa), 38 N. W. Rep., 135. The case cited was one in which the books and inventories had been destroyed by fire, and with a knowledge of this fact, the adjuster demanded and received from the insured copies of the invoices of his goods, and the court said: "When defendant was informed of the destruction of the books and inventories, and the manner in which they had been kept, it had the right—assuming that those facts constituted a forfeiture, as the court below held they did—at once to stand upon the forfeiture and declare the contract at an end. But it had the right also to waive the forfeiture and treat the contract as still in force, leaving the question whether it would pay the loss to depend upon investigation as to other facts. By its demand for the production of the copies of the invoices and bills, it made this latter election, for it thereby required plaintiff to produce for its inspection the evidence as to other facts upon which the question of its liability, independent of the forfeiture, depended." The same doctrine is advanced in Hollis v. Insurance Co. (Iowa), 21 N. W. Rep., 774.

Again, in the case of Titus v. Insurance Co., 81 N. Y., 410, the Court of Appeals said: "But it may be asserted broadly that if, in any negotiations or transactions with the insured, after knowledge of the forfeiture, it recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some trouble or expense, the forfeiture is, as a matter of law, waived; and it is now settled in this court, after some difference of opinion, that such waiver need not be based upon any new agreement or estoppel."—citing Allen v. Insurance Co., 12 Vt., 376; Webster v. Insurance Co., 36 Wis., 67; Gans v. Insurance Co., 43 Wis., 109; Insurance Co. v. Norton, 96 U. S., 234; Goodwin v. Insurance Co., 73

N. Y., 480; Prentice v. Insurance Co., 77 N. Y., 483; Brink v. Insurance Co., 80 N. Y., 108.

If the contention upon the part of appellees be well founded, that the estimate of loss was made by Landeau just as a favor to Burge & Allen, still, after he had complied with their desire, and they had disagreed with him, he had done all he promised, their negotiations were at an end, and his acts after that were not covered by the agreement. It was his suggestion that the invoices should be procured, and voluntarily, without solicitation from any one, he went to Sherman to see appellants to procure the invoices. If a forfeiture was to be claimed, there was no reason for putting appellants to the trouble and expense of procuring the duplicate invoices. If it was not a recognition of the vitality of the claim of appellants, there was absolutely no reason for it. It cannot be ascribed to the love of abstract investigation.

In this connection it is noticed that a detailed inventory is not called for in the policy, and the terms of a warranty will not be extended by construction, and we are of the opinion that the inventory that was contained in the ledger produced by Burge & Allen was a strict compliance with the requirement that an inventory should be produced. It gave, as separate items, the values of the dry goods, jewelry, drugs, etc., and that was all that was required. If insurance companies desire itemized or detailed inventories, let it be so written in their policies. . It follows from what we have said that it was error in the court to refuse to submit the question of waiver to the jury. Waiver is usually a question of fact, and there was evidence that required its submission to the jury. Appellants should have been permitted to show by experts that the entries in the books were what is commonly designated in business circles an "inventory."

It may be well to note that the limitation in the policies of the power of an agent to waive certain conditions in the policy do not apply to the adjuster after the policy has become a demand againt the insurance company. The limitation of the agent's authority clearly applies to things that occur before the policy becomes a demand against the company, and there is no limitation as to waiver of a forfeiture after the destruction of the property. The record shows no limitation of the authority of the adjuster.

In the policy in which both the house and its contents were insured, the amount of insurance on each class of property is seperately designated, but it was held by the trial court that a failure to comply with the terms of the iron safe clause forfeited the whole policy, and that nothing could be recovered for insurance on the house. Much conflict exists as to the severability of a claim for insurance under a policy insuring different items of property for separate amounts for a gross premium, and there is much respectable authority that sustains the position taken by the trial court. See note to Wright v. Insurance Co., 19 Law Ann. Rep., 211, where the conflicting opinions are collated. We are of the opinion that the iron safe clause could have had no reference to the

house insured, but must have referred to that part of the property affected by the clause, and we prefer to follow that line of decisions holding such contracts severable, and that forfeiture as to the goods would not necessarily work a forfeiture as to the house.    Wright v. Insurance Co. (Mont.), 19 Law Ann. Rep., 211; Pioneer Manuf'g. Co. v. Phœnix Assur. Co., 110 N. C., 176; Insurance Co. v. York, 48 Kan., 488;  Insurance Co. v. Spaukneble (Ill.), 4 Am. Rep., 582; Landman v. Insurance Co. (La.), 19 Ins. Law J., 572; Woodward v. Insurance Co., 32 Hun., 365; Insurance Co. v. Helfenstein (Pa.), 80 Am. Dec., 573; Merrill v. Insurance Co., 73 N. Y., 452; Schuster v. Insurance Co., 102 N. Y., 260.

There is nothing in the language of the iron safe clause that would indicate that it was the intention of the parties to include in the forfeiture anything but the personal property.    It is not the spirit of the law to favor or enlarge forfeitures by loose and liberal construction to that end.    Bills v. Insurance Co., 87 Texas, 547.

For the reasons hereinbefore stated, the judgment of the District Court will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered March 11, 1896.