PRUDENTIAL INSURANCE CO. v. FOSTER.

No. 30914. April 16, 1946.

*168 P. 2d 295.*

Coakley, McDermott & Gable, of Tulsa, for plaintiff in error.

John M. Milner and D. F. Rainey, both of Okmulgee, for defendant in error.

DAVISON, J. This is an action to recover double indemnity on account of alleged accidental death. Ivan Prentice Foster, hereinafter referred to as plaintiff, is assertedly entitled to the benefits payable under two policies of life insurance containing double indemnity provisions, issued by plaintiff in error, hereinafter referred to as the defendant or company, on the life of his father, Howard Arthur Foster.

The body of the insured was recovered from Lake Okmulgee, a few miles

from the city of Okmulgee, Okla., on September 21, 1939. The defendant company paid the face amount of the policy to plaintiff without litigation but refused to make the extra payment named in the double indemnity provisions.

Plaintiff pleads his allegations on the two policies in two separate causes of action set forth in his petition. After the court had ruled unfavorably on its motion to make plaintiff's petition more definite and certain as well as its demurrer to said petition, the defendant filed an answer renewing its challenge to the sufficiency of plaintiff's petition, denying, among other things, plaintiff's right to sue on his second alleged cause of action and asserting that the cause of insured's death was his own intentional act or suicide. Upon the issues framed by these pleadings and a reply filed by plaintiff, the cause was tried to a jury and resulted in a verdict and judgment for plaintiff.

From said judgment the company has appealed and argues its assignment of alleged error under four propositions. The first of these deals with the question of whether or not plaintiff was the proper party to institute the second cause of action alleged in his petition. It was based upon a commonly termed "industrial life insurance policy" and provided that immediately upon receipt of due proof of death the company would pay the amount of insurance therein specified "to the executors or administrators of the insured, unless payment be made under the provisions of the next succeeding paragraph; . . ." The next succeeding paragraph is headed "facility of payment" and reads as follows:

"It is understood and agreed that the said company may make any payment or grant any non-forfeiture provision provided for in this policy to any relative by blood or connection by marriage of the insured, or to any person appearing to said company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured; for his or her burial, or for any other purpose, and the production by the company of a receipt signed by any or either of said persons or of other sufficient proof of such payment or grant of such provision to any or either of them shall be conclusive evidence that such payment or provision has been made or granted to the person or persons entitled thereto, and that all claims under this policy have been fully satisfied."

In support of its argument on this feature of the case, the company cites authorities for the general rule that facility of payment clauses in industrial life insurance policies, providing that the insurer may pay the benefits under the policy to the beneficiary named or to a relative of the insured, are for the benefit of the insurer, to be exercised or not, at its option, and that they give a party to whom the insurer might have elected to pay the benefits no right to compel the insurer to make such payments to him. Plaintiff finds no fault with these cases, but asserts that the rule for which they stand has no application to the present one, for here the company had exercised its option and that he was not merely a party that it "might have elected to pay" but was the party it had elected to pay. It is said that the defendant's payment of the face amount of the policy to plaintiff estops it to deny that he is not the proper party to claim the additional double indemnity award. An examination of the authorities and the evidence in this case convinces us of the soundness of plaintiff's position. It is undisputed here that no executor or administrator was ever appointed for the insured's estate; that the company required only one proof of death to be made on the two policies sued upon, and that although the forms for making such proof brought to plaintiff by a representative of the company bore written instructions specifying that the statement provided for thereon should be completed by the "beneficiary" under the policy and if payable to insured's estate, the certificate must be executed by the administrator or executor, yet the assistant superintendent of the company witnessed the forms

with only plaintiff's signature thereon and recommended that his claim thus made, as an individual (rather than as a representative of his father's estate), be paid; that the face amount of both policies was paid to plaintiff on company checks written to him as an individual; that in correspondence from the company it was represented to plaintiff that his claim for double indemnity on the policies was denied solely because it was thought that insured's death was not accidental; that never until the institution of plaintiff's action did the company suggest to plaintiff that he was not the proper party to claim any of the benefits under the policy nor request that other claims or proofs be submitted. We believe that under the evidence in this case the defendant company, upon considerations of waiver and estoppel, is in no position to maintain at this late date that plaintiff is not the proper party to receive all the benefits payable under the policy. See Fipps v. Stidham, 174 Okla. 473, 50 P. 2d 680; American Central Life Ins. Co. of St. Louis, Mo., v. Sinclair, 61 Okla. 17, 160 P. 60; Farris v. Comm. Union Fire Ins. Co. of N. Y., 176 Okla. 331, 55 P. 2d 432; Prudential Ins. Co. of America v. Howell, 144 Okla. 166, 289 P. 734; Craddock v. Fidelity Life Ass'n, 226 Iowa, 744, 285 N.W. 169, 125 A.L.R. 1261; Clarkston v. Metropolitan Life Ins. Co., 190 Mo. App. 624, 176 S.W. 437.

Defense counsel call our attention to certain evidence indicating that plaintiff has paid only a part of the debts the insured owed at the time of his death and says that the company might have learned of some other person entitled to payment under the policy by reason of having paid such debts. They say this is suggested as a "possibility" in support of the contention that mere payment of the face amount of the policy did not necessarily mean that the company recognized plaintiff as a proper beneficiary for the other benefits. Such a "possibility" has no bearing on the question at issue. No matter to what extent the company may have been influenced to withhold payment to plaintiff of the sum in question by any possible discoveries it may have made with regard to the insured's debts and their payment, the fact remains that nothing of this sort was ever suggested or brought to plaintiff's attention before the trial of this case and constitutes no obstacle to application of the principles of waiver and estoppel herein. Nor could the fact that the insured left outstanding debts or that some were paid by persons other than the plaintiff furnish defendant any valid excuse for not following its payment of the face amount of the policy to plaintiff with payment to him of the double indemnity also. The company is not liable for the insured's debts nor was it bound to pay any part of the benefits under the policy to any person who had paid all or a part of them. Under the "facility of payment" clause, it could pay such benefits to a relative or anyone appearing "to be equitably entitled to same by reason of having incurred expense on behalf of the insured . . ." etc. The company is discharged from all liability after exercising its option of paying any one of the two classes of persons mentioned in this clause. The only condition upon the exercise of this option is that it must be done in good faith and this condition limits rather than extends the company's liability. Prudential Ins. Co. v. Howell, supra, and authorities therein cited. There has never been any suggestion in this case that plaintiff is not, as he is represented, the son and blood relative of the insured and thus one of a class of persons to which the company could and did in good faith select as eligible to receive payment under the "facility of payment" clause. And there can be no legal question but that full payment to him will discharge the company from all further liability without regard to any debts which might constitute valid claims against the insured's estate. In addition to Prudential v. Howell, supra, see Clarkston v. Metropolitan Life Ins. Co., supra.

One of the propositions presented in defendant's brief deals with alleged de-

fects in plaintiff's pleadings. It first raised the points by its motion to make more definite and certain and demurrer, and now asserts that the trial court's unfavorable rulings thereon were erroneous because plaintiff's petition is defective in pleading conclusions of law without setting forth actual facts to support them, in alleging that the exact means of insured's death was unknown to him, but known to the defendant, that the petition is an alternative pleading and pleads that insured's death was caused in either of two ways. As we view the matter, these questions are not properly before us. The defendant interposed no objection to the introduction of evidence in support of plaintiff's petition until the second day of the trial and a substantial portion of plaintiff's evidence had already been introduced. This objection was neither timely nor proper and will be deemed no objection at all, from the standpoint of preserving for review by this court, the errors alleged in the trial court's previous rulings on the sufficiency of plaintiff's petition. See 3 Am. Jur. 95, par. 350; 4 C.J.S. 685, § 331. And in this jurisdiction it is a well established rule of appellate review that the judgment of a trial court will not be reversed on account of alleged defects or omissions in the petition, if such defects or omissions are supplied by the proof, without objection. Van Horn v. Van Horn, 193 Okla. 182, 141 P. 2d 1006; Riddle v. Brann, 190 Okla. 456, 124 P. 2d 402; Buckholts v. Wright, 186 Okla. 230, 97 P. 2d 44, and other cases cited in 11 Okla. Dig., under Pleading, Key No. 406 (9). Consequently no further consideration will be given such alleged errors, unless the verdict and ultimate judgment for plaintiff are without sufficient proof to support them.

This brings us to a consideration of the trial court's allegedly erroneous instructions to the jury. The first of these is instruction No. 5, which, omitting the formal parts, is as follows:

"You are instructed that the love of life is presumed, and that no man will intentionally take his own life; but the presumption may be overcome by evidence and the defense in this case being suicide, or self-destruction, the burden still rests upon the plaintiff to maintain that presumption.

"You are instructed that the finding of the body of the insured, Howard A. Foster, in Okmulgee Lake, and the cause of such drowning being unexplained, raises no presumption that the death of the insured was intentional or self-inflicted."

The first charge made against the above-quoted instruction is that the second line thereof states it as a positive fact, rather than as a presumption, that "no man will intentionally take his own life." Such an interpretation calls for a scrutiny of this sentence as to grammatical construction it is hard for us to believe the jury resorted to, in order to fabricate a meaning or proposition clearly contrary to what is common knowledge. The jurors must have known, as do most adults of ordinary intelligence and experience, that men will sometimes intentionally take their own lives, and to have readily concluded that the phrasing of the second line when considered with the first was merely an inadvertent error and that the trial judge intended the instruction as if it had read as follows: You are instructed that the love of life is presumed and (it is presumed) that no man will intentionally take his own life.

Counsel also find fault with that part of the instruction stating that "the love of life is presumed." This was an obvious allusion to what has been commonly termed "the presumption against suicide," which has been said to arise fundamentally from man's commonly known and recognized love of life and fear of death. See annotation 103 A.L. R. 185. It is contended that the instruction had the effect of giving this presumption force as evidence, doing violence to what the authorities have said of the true character and proper office of such presumption. Examples cited are certain expressions of this court in Stumpf v. Montgomery, 101 Okla. 257, 226 P. 65, of the United

States Supreme Court in New York Life Insurance Co. v. Gamer, 303 U.S. 161, 82 L.Ed. 726, and of Mr. Hartman in an article at page 20, vol. 19, Marquette Law Review. We do not entirely agree with the view that the presumption against suicide is no more than a rule for the guidance of the court in determining upon whom rests the burden of coming forward with the evidence and that it never has a place in a charge to the jury, nor do we believe that it should be considered as evidence; albeit in cases of entirely unexplained death, where there is no evidence tending to support the theory of suicide, it effectively takes the place of evidence and relieves the plaintiff of the burden of proving that the death was accidental, as a part of his prima facie case. Where, however, there is evidence introduced to explain the death and tending to show it was suicide, then whether or not it was accidental or intentional remains a question in the case, and plaintiff cannot rely upon the inference or presumption against suicide to discharge for him his burden of proof on this necessary element of a prima facie case. See Cotcha v. Ferguson, 165 Okla. 295, 25 P. 2d 767. We will not say that upon the introduction of such evidence the inference "drops out of the case" as some courts express it, for we think this is confusing and misleading. It has been said to have "no probative value" to be weighed against evidence to the contrary, but it is always present in such cases, at least to the extent that the jurors will naturally weigh the evidence and test the persuasiveness of the facts proved on the issue, in the light of human experience and the truth gained from it that under most circumstances a human being will not deliberately and intentionally destroy himself. Consequently, we do not believe that instructions giving the court's approval to the jury's consideration of this truth, even in cases where evidence is introduced to support the theory of suicide, is error it such instructions are properly drawn or composed. In support of this view see Walters v. Western & S. L. Ins. Co., 318 Pa. 382, 178 A. 499; Watkins v. Prudential Ins. Co., 315 Pa. 497, 173 A. 644, 95 A.L.R. 869; New York Life Ins. Co. v. King, 28 Ga. App. 607, 112 S.E. 383: Modern Woodmen v. Craiger, 175 Ind. 30, 92 N.E. 113.

It must be noted that following the language complained of, the court also told the jury ". . . the presumption may be overcome by evidence and the burden still rests upon the plaintiff to maintain that presumption." In accord with the views above expressed, we are of somewhat the same opinion of this instruction as was the court of the instruction complained of in Walters v. Western & S. L. Ins. Co., supra, which is that while the trial judge should perhaps have made it clearer to the jury that the nonprobability of Foster's death by suicide could not be weighed as evidence, and the language complained of, if standing alone, might be deemed reversible error, still, we are not convinced that the instruction, when considered as a whole, was intended to or did have the insidious effect attributed to it by counsel. In other instructions given by the court the burden of proving accidental death by a preponderance of the evidence was specifically placed upon the plaintiff, and the jury was warned against singling out any one or part of an instruction, but was told that they should consider each instruction with the others in the case. Errors in instructions, as errors in practice and procedure generally, are not deemed sufficient cause for reversal unless it appears that the rights of the party complaining thereof have been prejudiced thereby. Usually the most certain indication that such prejudice has occurred will be found in the verdict. If it is supported by the evidence and it can be said from a review thereof that the verdict would not have been different if the alleged errors had not occurred, then this court will not reverse a judgment based upon such verdict. Final conclusion as to the seriousness of the alleged error, above complained of, as well as the other alleged

error in the instructions, will therefore be reserved for our consideration of defendant's charge that the verdict is contrary to the evidence.

In the other instruction complained of, the court told the jury that in order to warrant returning a verdict on circumstantial evidence, all the facts and circumstances proven should not only be consistent with the conclusion sought to be reached, but consistent with each other and inconsistent with any other reasonable hypothesis or conclusion. Plaintiff's counsel does not dispute defendant's charge that the instruction referred to was erroneous in requiring the jury to measure the sufficiency of the circumstantial evidence in the present case by the standard properly used only in criminal cases (see Tulsa County Truck & Fruit Growers Ass'n v. McMurphey, 185 Okla. 132, 90 P. 2d 927), but says that if the instruction was error, it was as unfavorable or unfair to the plaintiff as to the defendant, requiring all of the circumstantial evidence introduced on behalf of both parties to meet the same test. We find it unnecessary to express an opinion on the correctness of the instruction, for we have concluded that the evidence relied upon by the defendant to prove its theory of suicide was so unconvincing that the verdict cannot be said to be contrary to the evidence, nor do we feel that it should or would have been different if the alleged errors had not occurred.

There were no eyewitnesses to the insured's death or to anything that might be considered the certain cause thereof. He was not missed until he failed to report for work at the Phillips Refinery about midnight, the night before his body was recovered from Lake Okmulgee. It was stipulated and agreed that if the physician who examined his body had been present at the trial, he would have testified that Foster died of drowning. Whether the drowning was intentional or accidental was never satisfactorily explained.

Plaintiff's theory was that the deceased had either intentionally gone into the lake to fish or retrieve a fishing line and had accidentally stepped off into water over his head or that he had met with foul play. In support of the first of these alternative theories, it was shown that Foster was an inveterate fisherman, having regularly fished in Lake Okmulgee, sometimes at night with a flashlight, but that he could not swim. The bed of the lake is uneven with rock ledges, abrupt step-offs and deep holes in some places. His hat, purse, and probably his tobacco can were found on the shore about 15 feet from the edge of the water with footprints leading into the lake in direct line with where his body was discovered 25 feet from the shore. To support the other of plaintiff's theories, he testified that he had perceived a scar on his father's head after his body was discovered and it was shown that there had been some sort of a disturbance around a squatter's campsite near the lake the night of the tragedy, but there was no direct nor circumstantial evidence to connect this disturbance with the insured.

The defendant sought to support its theory of suicide by showing that Foster was despondent because of loneliness or his financial condition, or both, but the evidence introduced for this purpose was also unconvincing. It was shown that at the time of his death Foster was more than 50 years old; that his wife had been dead approximately four years; that he lived alone in a rented room or apartment in Okmulgee; that about two years previous to his death he became acquainted with a waitress by the name of Myrtle Decker. This lady testified by deposition that during periods extending over more than a year when she was in or near Okmulgee they would not infrequently go to meals and shows together and that Foster seemed to think quite a bit of her. However, the deposition as a whole indicates that the two were no more than just good friends, though the waitress testified that Foster had wept on occasions of their parting. The evidence further shows that a month or so before Foster's death Miss Decker had

gone to New Mexico and married one Tom Foley whom she had known at Ketchum, Okla., but there was no proof that her marriage had a depressing effect on Foster. She testified that on one occasion the two had discussed the subject of marriage, but there is nothing to indicate that either had thought of marrying the other. The record further shows that the deceased had many friends in and around Okmulgee and that he was generally of a happy and jovial disposition. There was some testimony to the effect that he seemed more nervous than usual several weeks before his death, and that he frequently expressed concern about the war, but there was no evidence that he had any close friends or relatives involved or about to be directly involved therein, nor that he gave the war any more thought than the average citizen of that period. Neither the letter written to his son in Coffeyville, Kan., nor any of his other conduct on the day before his death gave any indication of contemplated suicide. There was evidence that Foster owed several debts at the time of his death, but their total amount was not excessive for a man of his earning capacity, and the evidence as a whole falls far short of showing that he was financially embarrassed or about to suffer any calamity in that respect.

Thus it will be seen that none of the evidence produced at the trial gave a credible or plausible explanation of the insured's death. As there was no convincing proof of circumstances which have been known to cause men to commit suicide, the jury properly concluded that it was accidental. As its verdict cannot be said to lack sufficient evidentiary support in view of the not uncommon dearth of direct proof in cases of this character, and it does not appear that the verdict would have been otherwise without the alleged errors complained of, such errors will be deemed harmless and insufficient cause for reversal. The judgment of the trial court is therefore affirmed.

GIBSON, C.J., HURST, V.C.J., and RILEY, OSBORN, WELCH, and CORN, JJ., concur. ARNOLD, J., concurs in result. BAYLESS, J., dissents.