See also Kernel v. Murrell, 122 Okl. 22, 250 P. 420, at page 421, wherein this court said:

"The law *looks* with *suspicion upon* transactions between trustees and beneficiaries, and, when the cestui que trust sells trust property to the trustee, the burden is placed upon the grantee or trustee to whom such transfer is made to show that the grantor or cestui que trust was in possession of full information and acted upon her own *volition* or independent advice, and free from all influence of the grantee or trustee to whom such transfer is made."

On the question of sufficiency of the evidence, the following is the settled law of this state with regard to demurrers to the evidence:

"A demurrer to the evidence admits all the facts which the evidence reasonably tends to prove, and all the inferences and conclusions which may reasonably and logically be drawn from the evidence, and, upon demurrer to the evidence, the plaintiff is entitled to every inference which the evidence, considered in the light most favorable to him, reasonably tends to prove." Adams v. Stanolind Oil and Gas Co., 187 Okl. 478, 103 P.2d 526.

We hold that the above testimony, together with documentary evidence introduced ·as exhibits in this case, was sufficient to withstand a demurrer.

The judgment is reversed and this cause is remanded, with directions to grant plaintiff a new trial.

JOHNSON, V. C. J., and CORN, ARNOLD and O'NEAL, JJ., concur.

BLACKBIRD, J., dissents.

## EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES v. NEALE et al.

### No. 35610.

Supreme Court of Oklahoma.

May 12, 1953.

Rehearing Denied June 23, 1953.

Green, Farmer & Woolsey, J. B. Bailey, Tulsa, Forrester Brewster, Muskogee, for plaintiff in error.

Kelly Brown, C. A. Ambrister, Muskogee, for defendants in error.

O'NEAL, Justice.

In this action, beneficiaries, under an insurance policy, seek to recover double indemnity under the policy in the event death of the insured resulted from bodily injury effected solely through violent and accident-

al means. The beneficiaries recovered judgment in the trial court and the insurer appeals.

Gladys Neale and Tom Neale were plaintiffs below, and The Equitable Life Assurance Society of the United States, was defendant, and will be referred to as they appeared in the trial court.

James M. Neale died on or about January 5, 1951. At the time of his death he was the holder of a life insurance policy issued by the defendant company, which provided that the insurer would pay the sum of $6,000 upon the death of James M. Neale, or the sum of $12,000 in the event his death occurred from an accident.

The insurer, upon proof of death, paid the beneficiaries the sum of $6,000, and disclaimed further liability on the ground that the insured did not die as a result of an accident within the purview of the double indemnity provisions in the insurance contract.

The insurer denied liability upon the assertion that the death of deceased did not result "solely from injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means" as the contract provided.

The record discloses that James M. Neale had a cerebral hemorrhage in 1927. After several months he was able to resume work. In April, 1936, he suffered a fracture of his left leg. In 1949, the leg was again broken. He was compelled to use a brace upon his left knee, and he had to use crutches to assist him in walking. He was a large man, six feet one inch in height and weighed nearly 200 pounds. After receiving the leg injury he would frequently fall, especially when he failed to use the knee brace or crutches.

On the 3rd day of January, 1951, Mrs. Neale, his wife, left the home to visit their son, who then resided at Fort Smith, Arkansas. Several days later she and the son returned to their home. Upon their return to the house they found Mr. Neale lying on the kitchen floor, face down, and beneath his head was a pool of blood the size of a large dinner plate. He had been dead for some hours when found. Upon examination they found a cut over his right eye approximately one and one-half inches in length and a large knot about the size of a golf ball upon his forehead. The right eye was badly swollen and discolored; his eyeglasses were found broken, a portion lying near the kitchen stove, and a part of the eyeglasses was upon the stove; his leg brace was found hanging on the foot of his bed and his crutches were standing in the corner of the kitchen.

Thereafter, and in the month of April, 1951, Dr. Berry and Dr. Hopps performed an autopsy and we shall advert to their evidence infra.

Dr. Berry, who had practiced medicine in Muskogee, Oklahoma for about forty years, testified that the primary cause of the death of Mr. Neale was the accidental fall and the injury which he sustained. Dr. Hopps, a practicing physician since 1939, testified that the heart of the deceased presented a condition of severe arteriosclerosis. Dr. Berry stated that in his opinion the primary cause of Mr. Neale's death was the blow to his head; that he wasn't dead when he fell or his face wouldn't have swelled up and discolored, and that there would not have been the quantity of blood of the size of a dinner plate under his head. He likened the heart to a pump and stated that it quit pumping when it quit going; and from the quantity of blood on the floor, he was of the opinion that his heart was still going when he fell. In answer to the following question: "And does the cut and injury and the resulting swelling to the size of a golf ball indicate anything, Doctor?" To which Dr. Berry responded: "Well, that same thing; the heart was pumping, or it wouldn't have brought that extravasation into the tissue." He testified further that from the autopsy he concluded that one of the coronary arteries of the deceased was entirely occluded, and the other one was only large enough for a small amount of blood to go through it; that this condition of the heart would ultimately cause death but he was of the opinion that Mr. Neale's heart was still functioning, or he wouldn't have bled. Upon cross-examination he testified that the man had arteriosclerosis or a calcification of his blood vessels, describing

their condition to an old boiler with a lot of sediment in it around its flues, which ultimately, prevents water flowing through it; that if this calcification progressed to the extent of causing an occlusion, the patient would die.

Dr. Hopps, who participated in the autopsy, testified that the major changes were found in the heart, and it presented a condition of severe arteriosclerosis, which involved all of the major blood vessels of the heart, narrowing some of them to a very small opening; that a large vessel in the heart had a recent blood clot within it, which completely obstructed it. He testified as to the cut over the right brow, and of the bruised condition of the right eye; that he examined the skull under these bruises but found no fracture, nor was there any evidence of hemorrhage into the brain. From this examination he concluded and gave it as his opinion, that Mr. Neale died as a result of an occlusion of one of his coronary arteries; that it was much more likely that the heart condition caused him to fall.

The record discloses the following questions were asked and answers given:

"Q. Now, if this man had this condition that you've found there, and he did have a fall or there was some shock to his entire system, wouldn't that tend to accelerate that condition and bring it to a focus? A. It is certainly a possibility. In other words, I couldn't say that such a thing is absolutely impossible. I consider it very unlikely.

"Q. Well, Doctor, put it the other way: You wouldn't say that if you find a man who had a heart condition such as you've found there, and he was living; and he would exercise himself to some way, or in some way or other, have received a blow such as where he had a cut over his eye and a swelling there, which they have described as about the size of a golf ball, showing that he had received a severe blow—wouldn't that tend to accelerate that and bring that to a head, and for example you had— A. Well, all I can say is that the sudden coronary occlusion is rarely precipitated by a sudden blow or exertion of the sort that produces sudden death.

"Q. But it is sometimes so, isn't it, Doctor? A. Yes, it's possible.

"Q. If you will, just state then just what you did say, Doctor. A. I said I believed that he died as a result of his cardiac condition, or the heart condition; and that I thought it was much more likely that the heart condition caused him to fall than that he fell and that precipitated his heart condition."

Neither Dr. Berry, as a witness for the plaintiffs, or Dr. Hopps, as a witness for the defendant, had treated Mr. Neale during his lifetime. Their opinions and conclusions were based upon the case history and their knowledge obtained by the autopsy.

The unique circumstances of the case demonstrate that a correct solution cannot be reached solely upon the proof as to the external injuries of the deceased. So, of necessity, proof was submitted by men of science whose conclusions and opinions we have averted to.

In view of the positive evidence of Dr. Berry that the primary cause of Mr. Neale's death was the blow or injury to his head, and the evidence of Dr. Hopps to the effect that the fall as disclosed might result in a coronary occlusion, but that he did not think it did so here, presented a question which was resolved by the verdict of the jury in plaintiffs' favor.

The insurance policy, insofar as the double indemnity feature thereof is pertinent, provides:

"The increased amount of insurance as stipulated on the face hereof, in case of accidental death shall be payable upon receipt of due proof that the death of the insured occurred while this policy was in full force and effect, and resulted solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means, provided that death shall ensue within 90 days from the date of such injuries and shall not be the result of or be caused directly or indirectly by self-destruction, sane or insane, disease or illness of any kind, physical or mental infirmity, * * *"

Defendant asserts that under decisions of this court in Federal Life Ins. Co. v. Firestone, 159 Okl. 228, 15 P.2d 141, Great Northern Life Insurance Co. of Milwaukee, Wis. v. Farmers' Union Co-Op. Gin Co., 181 Okl. 370, 73 P.2d 1155 and Federal Life Ins. Co. v. Maples, 204 Okl. 195, 228 P.2d 363, the verdict and judgment rendered thereon cannot be sustained.

In the Firestone case it appears that the insured received some injury in an automobile accident. He drove his car some distance to his hotel and immediately proceeded to indulge in heavy drinking of alcoholic beverages. He continued the excessive drinking for a period of twelve days. The day before his death the manager of the hotel called a doctor to examine Firestone, who testified that he found some bruises on his body; that his patient was in a stupor and that from his diagnosis he concluded, and so testified at the trial, that death was caused from alcoholic poisoning.

Another physician who also testified for plaintiff gave it as his opinion that the injuries were sufficient to cause a contusion or hemorrhage of the brain. The opinion in the case is based upon the conclusion that plaintiff did not establish that the accident was the cause of death independently of all other causes.

In the Farmers' Union Co-Operative Gin Co. case the insured received an injury to his hand while working in a cotton gin. After six weeks the wound was entirely healed. He died some two years after the accident. The evidence established without serious contradiction that the insured was afflicted with syphilis. Plaintiff's physician testified that the injury to the hand contributed to and made active the potential disability lurking in the syphilis. The sole question presented was whether there was any evidence reasonably to support the finding that the injury resulted solely from bodily injury. This court held it did not, and therefore reversed the cause.

The Maples case discloses that Maples received a head injury. No proof was offered as to how the injury was received. His wife dressed the wound and the following day, Maples died. In the suit to recover the double liability under the contract the proof established that the injury was external, raising a presumption that the same was accidental and therefore sufficient to sustain the verdict and judgment. The two cases first cited and relied upon were considered in our opinion in New York Life Ins. Co. v. Wise, which was affirmed by this court November 18, 1952, and appears in 207 Okl. ——, 251 P.2d 1058, 1061. In this case which involved the double liability feature of a life insurance policy, the record discloses that the insured assisted in pushing an automobile from the curb in front of his hotel. The exertion caused a rupture of a blood vessel in the esophagus; that the vessel was in a weakened condition due to the fact that the deceased had cirrhosis of the liver, making the vessel subject to rupture upon violent exertion. We there held that the trial court did not err in submitting to the jury the question whether the death resulted from bodily injury as provided by the policy, or directly or indirectly from the disease. The defendant there, as here, relied upon our decisions in the Firestone and in the Farmers' Union Co-Operative Gin Company cases, supra. Disposing of their application, we said:

"It is to be noted in these cases that the so-called disease directly contributed to the death of the deceased."

The opinions and conclusions of expert and skilled witnesses (as in the field of medicine) are entitled to respect and are frequently decisive of the cause of death; but expert evidence, even if unambiguous and uncontradicted, is not necessarily conclusive, but may be disregarded by the jury. In the instant case both sides introduced so-called expert testimony. The jury had the right to believe either or reject all. Johnson Oil Refining Co. v. Elledge, 171 Okl. 398, 42 P.2d 840; Magnolia Petroleum Co. v. Norton, 189 Okl. 252, 116 P.2d 893.

We find evidence in the record from which the jury could find (a) that the deceased suffered a severe head injury by accident; (b) that death resulted by violent means; (c) that in the opinion of one physician death resulted from the fall and injuries inflicted; and (d) that in the opinion of another physician death resulted

from an occlusion of the heart that caused the fall. Upon these disputed facts the jury found the issues in favor of the plaintiffs; thus finding that the death was effected by external, violent and accidental means within the terms of the quoted insurance policy.

Lastly, defendant urges that Instructions Nos. 3, 4, 6 and 7 were erroneously given which requires a reversal of the case.

Instruction No. 3 told the jury to weigh the evidence of the expert witnesses and determine whether the deceased came to his death as a result of a fall or accident, or whether he died as a result of the diseased condition of the heart.

Instruction No. 4 told the jury that if they found deceased had an impaired heart that it did not preclude plaintiffs' recovery if deceased received a fall which accelerated deceased's condition to such an extent that death resulted—that then it was an accidental death.

Instruction No. 6 told the jury that if deceased fell and received the head injury disclosed which aggravated a diseased condition, that the death was an accidental death under the policy. That Instruction further reads:

"You are further instructed, however, that if you do not find and believe from the evidence that the deceased fell and as a result of that fall he received a severe blow on the head which accelerated or aggravated a diseased condition which was present and had been present for some time and that death resulted therefrom, it was not an accidental death within the meaning of this policy and your verdict should be for the defendant."

Instruction No. 7 told the jury that if deceased came to his death from an occlusion of the heart which resulted directly and independently and solely from the fall that the occlusion of the heart and his consequential death was a result unexpected, unforeseen and involuntary and justified plaintiffs' recovery.

As to Instructions Nos. 3, 4 and 6, defendant again argues that under the Firestone case the instructions are erroneous.

We do not so construe the Firestone case as applied to the instant case. As we have heretofore pointed out, all that the Firestone case decided was that the proof did not establish that the accident was the cause of death independently from all other causes.

As to Instruction No. 7, defendant asserts that instruction presupposes that the plaintiff introduced proof that the deceased's fall did cause an occlusion, or probably did cause an occlusion. In its brief, defendant says: "We submit that we have searched this record in vain for testimony, by either party, that the occlusion which defendant contends caused the death of the deceased, came about as a result of the fall, if one was had, prior to the time the occlusion itself struck the heart."

Suffice it to say that Dr. Hopps gave it as his opinion that while a sudden coronary occlusion is rarely precipitated by a sudden blow causing death, he further stated that it could possibly do so. We think the proof warranted the giving of Instruction No. 7.

Under 22 O.S.1951 § 1068, an appellate court of this State may not set aside a judgment on the ground of misdirection of the jury, unless, from an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice. Prudential Insurance Co. v. Foster, 197 Okl. 39, 168 P.2d 295, 166 A.L.R. 1, Pine v. Duncan, 179 Okl. 336, 65 P.2d 492 and Watson v. Butler, 170 Okl. 350, 40 P.2d 653.

▆ We find that the instructions as a whole fairly submitted the issues which were supported by proof.

We are of the view that the death of the deceased as found by the jury was effected by external, violent and accidental means within the provisions of the quoted policy, and that, therefore, the judgment is affirmed.

CORN, DAVISON, ARNOLD (in conclusion), WILLIAMS and BLACKBIRD, JJ., concur.

HALLEY, C. J., dissents.

HALLEY, Chief Justice (dissenting).

The majority opinion ignores the testimony and the plain provisions of the insurance policy here involved. On the face of this policy is found this provision:

"* * * and in event of death from accident the society agrees to increase the amount so payable to—Twelve Thousand Dollars—upon due *proof that the death of the Insured resulted solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means,* subject to the terms and conditions contained on the third page hereof."

On page three under Privileges and Conditions, this provision is found:

"The increased amount of insurance as stipulated on the face hereof, in case of accidental death shall be payable upon receipt of due proof that the death of the Insured occurred while this policy was in full force and effect, *and resulted. solely from bodily injuries, caused directly, exclusively and independently of all other causes by external, violent and purely accidental means,* provided that death shall ensue within 90 days from the date of such injuries and *shall not be the result of or be caused directly or. indirectly by self-destruction, sane or insane, disease or illness of any kind, physical or mental infirmity,* any violation of law by the Insured, military or naval service of any kind in time of war or by engaging as a passenger or otherwise in submarine or aeronautic expeditions. The Society, in order to determine whether death occurred within the meaning of this provision, shall, in the absence of legal restrictions, have the right and opportunity to make an autopsy."

The burden was upon the plaintiff in this case to show that the deceased's death resulted solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means and was not the result of or caused directly or indirectly by disease or illness of any kind, physical or mental infirmity. Federal Life Insurance Company v. Firestone, 159 Okl. 228, 15 P.2d 141. This was not done. The nearest that the plaintiff came to it was shown in the answer of the doctor offered by plaintiff to a long but incomplete question as to cause of J. M. Neale's death which is as follows:

"A. Well, I hardly know how to answer it. I think that primary cause of death was the blow."

This answer in no way eliminates the possibility that disease and physical infirmity were contributing factors to Mr. Neale's death. This witness further testified:

"A. Well, I don't know whether I should explain anything or not. I saw this man's heart and I know it was definitely diseased."

In light of this statement, I do not see how anyone could say and no one did that the diseased heart was not a condition that contributed to Mr. Neale's death. There is no testimony that if the deceased had been a well man that the fall would have resulted in death.

Arteriosclerosis in other parts of the body was not eliminated as a contributing cause.

The next error in the case, which cannot be "plower around" in any way, is the giving of Instruction Number Six which is as follows:

"You are instructed that if you find and believe from the evidence that the deceased fell and as a result of that fall he received a severe blow on the head which accelerated or aggravated a diseased condition which was present and had been present for some time and that death resulted therefrom, it was an accidental death within the meaning of this policy and your verdict should be for the plaintiff.

"You are further instructed, however, that if you do not find and believe from the evidence that the deceased fell and as a result of that fall he received a severe blow on the head which accelerated or aggravated a diseased condition which was present and had been present for some time and that death resulted therefrom, it was not an acci-

dental death within the meaning of this policy and your verdict should be for the defendant."

This instruction tells the jury that it may find for the plaintiff if it finds that the deceased fell and as a result of that fall he received a severe blow on the head which accelerated or aggravated a diseased condition which was present and had been present for some time and that death resulted therefrom. This instruction is in absolute conflict with the provisions of the insurance contract. This tells the jury if the death was the concurrent result of a pre-existing condition the plaintiff may recover. This is contrary to the rule long established in this State. Great Northern Life Insurance Co. v. Farmers Union Co-Operative Gin Co., 181 Okl. 370, 73 P.2d 1155. I would like to quote from 45 C.J.S., Insurance, § 938, subsection d (3) at page 1088:

"If an accidental injury and the preëxisting disease or infirmity coöperate in causing the death of insured, double indemnity cannot be recovered, even though the injury is an active, efficient, and procuring cause, provided the disease or infirmity contributes, either directly or indirectly, to the causing of insured's death, or if, as has been held, the disease or infirmity is the proximate cause of insured's death. This rule applies where the preëxisting disease so aggravates the effect of the accident, or the accident so aggravates the effect of the disease, that the accident would not have proved fatal except for the disease."

The last half of Instruction Six in no way relieves the vice of it.

Here was a man who had a stroke in 1927, a year after the policy was purchased, and who sustained an injury in 1936 that permanently disabled him and he was paid sixty dollars a month from that time until his death in 1951. He never paid a premium after 1936 and was not required to pay part of the premiums previously because of disability. The defendant in this case by the use of plain and simple English provided in the contract that it should not be liable for double indemnity unless the death resulted solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means and death shall not be the result of or be caused directly or indirectly by disease or illness of any kind or by physical or mental infirmity. Plaintiff failed to show death came to the deceased as required by the terms of the policy.

This case should be reversed. I dissent.